(No. 76475.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RAYMOND TURNAGE, Appellee.

*Opinion filed October 27, 1994.*

Roland W. Burris, Attorney General, of Springfield, and David R. Akemann, State's Attorney, of Geneva (Norbert J. Goetten, Robert J. Biderman and Jeffrey K. Davison, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Fred M. Morelli, Jr., of Aurora, and Vincent Argento, of Elgin, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

This appeal is a review of a trial court order granting defendant's motion to quash his arrest and suppress evidence. The contested arrest occurred after the arresting officer relied on electronically communicated information that there was a valid arrest warrant. However, the warrant was later recalled because the defendant had been previously arrested and released on bond for the same offense. We must decide whether the "good-faith" exception to the exclusionary rule should apply to prevent the suppression of evidence recovered in the search incident to the subsequent arrest.

The circuit court of Kane County granted defendant's motion to quash the subsequent arrest and suppress the evidence, finding that the good-faith doctrine did not prevent the application of the exclusionary rule. A divided appellate court affirmed the suppression of the evidence, also finding the "good faith" doctrine did not apply, but for different reasons than the circuit court. (251 Ill. App. 3d 485.) We granted the State's petition for leave to appeal under Rule 315(a) (145 Ill. 2d R. 315(a)). We affirm.

## I. Background

The evidence defendant seeks to suppress in this case came as the result of defendant's arrest on a warrant charging him with crimes for which he had already appeared and posted bond. Initially, on December 10, 1990, defendant was charged with unlawful delivery of a controlled substance by complaint for a preliminary hearing. The exact charge is not noted in the record on appeal. On December 13, 1990, an arrest warrant was executed on defendant for this charge and he was taken into custody. The record is also not clear concerning circumstances of the execution of this warrant. Defendant was released on bond on December 17, 1990, having posted $5,000 of a $50,000 bail.

On December 18, 1990, seven days after being charged by complaint and the day after being released on bond, a grand jury indicted defendant on the same charge. Based on this indictment, a different judge issued a second warrant for defendant's arrest. This duplicate warrant remained active while defendant made at least three court appearances on the original charges brought by complaint. Defendant was not advised that he had been indicted or that a warrant was pending for his arrest. The repetitive warrant was executed on defendant some three months later on March 23, 1991. A search incident to this second arrest produced the evidence that is the subject of the criminal charges in the present case. The record also reveals that this repetitive warrant, although already executed on March 23, 1991, was recalled on April 11, 1991.

Officer Podschweit of the Aurora police department executed the repetitive warrant on defendant and uncovered the evidence that is the subject of the motion to suppress. Officer Podschweit testified at the suppression hearing that he recognized the defendant driving a white Bronco. Having seen the defendant's name on an active warrant list on approximately three earlier occasions, Officer Podschweit pulled over the Bronco and called over his radio to confirm the warrant with the sheriff's department. After being advised that the warrant was still active, Officer Podschweit arrested the defendant over defendant's objection that there was no active warrant. On cross-examination, Officer Podschweit admitted that he had no other basis to stop or arrest defendant other than executing the warrant at issue.

Officer Podschweit further testified that after placing defendant under arrest, he located a gun between the seats of defendant's Bronco. In addition, while Officer Podschweit waited for a van to transport the defendant,

a sheriff's car with a canine unit arrived at the scene. When the canine alerted the officers to the presence of drugs in the Bronco, a search was conducted that turned up narcotics. Defendant was subsequently charged with one count each of unlawful possession of a controlled substance (cocaine) with intent to deliver (Ill. Rev. Stat. 1991, ch. $56^1/2$, par. 1401(a)(2)(A)), unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. $56^1/2$, par. 1402(a)(1)(A)), unlawful use of a weapon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(4)), unlawful possession of a firearm without a firearm owner's identification card (Ill. Rev. Stat. 1991, ch. 38, par. 83—2), and unlawful possession of cannabis (Ill. Rev. Stat. 1991, ch. $56^1/2$, par. 704(a)).

Defendant filed a motion to quash the arrest and suppress the resulting evidence based on the repetitive nature of the warrant. At the hearing on the motion, Officer Podschweit was the only witness and testified to the circumstances surrounding his execution of the warrant. Defendant argued that the repetitive warrant was invalid and therefore the arrest should be quashed and the resulting evidence suppressed.

The trial judge then heard argument on whether to apply the good-faith exception to the general rule excluding illegally seized evidence. The State argued that Officer Podschweit acted in objectively reasonable reliance on a facially valid warrant and therefore the good-faith doctrine as set forth in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, should prevent the suppression of the evidence. The trial court held that *Leon* did not apply because *Leon* involved a police officer's reliance on a probable cause determination of a judge or magistrate, while in the instant case a grand jury determined the existence of probable cause. The trial court accordingly quashed the defendant's arrest and suppressed the evidence, and the State appealed. 134 Ill. 2d R. 604(a)(1).

A divided appellate court affirmed the suppression of the evidence found as a result of defendant's arrest, but found for different reasons that the good-faith doctrine articulated in *Leon* did not apply. The court first determined that the second arrest warrant was invalid. (251 Ill. App. 3d at 489.) It then turned attention to whether the good-faith doctrine should prevent exclusion of the evidence. The court rejected the distinction made by the trial court that *Leon* only applies to good-faith reliance on a probable cause determination by a judge. (251 Ill. App. 3d at 489.) It found that such a determination by a grand jury is equally conclusive as to probable cause and therefore such a distinction was not a valid basis to distinguish *Leon*. 251 Ill. App. 3d at 490.

Although rejecting the reasoning of the trial court, the appellate court found that the good-faith doctrine of *Leon* should not apply and therefore the evidence was properly suppressed. The court reasoned that a repetitive warrant is a circumstance where law enforcement officials can claim no "reasonable grounds" on which to base an objectively reasonable belief in the validity of a warrant. (251 Ill. App. 3d at 492.) Unlike a judicial determination of probable cause, the repetitive nature of a warrant is not a matter in which deference to a judge is expected. (251 Ill. App. 3d at 491.) In addition, the court noted that in this instance the deterrent function of the exclusionary rule would be served by providing an incentive to keep records up to date and preventing fishing expeditions based on old warrants. 251 Ill. App. 3d at 492.

The dissenting justice agreed that the repetitive warrant was invalid, but argued that the good-faith doctrine of *Leon* should apply to prevent suppression of the evidence seized. According to the dissenting justice, there was nothing more that the officer could have done to check on the warrant's validity. (251 Ill. App. 3d at

493 (Inglis, P.J., dissenting).) The dissenting justice questioned the suggestion by the majority that the department as well as the individual officer must have no reasonable ground to doubt the validity of the warrant. (251 Ill. App. 3d at 493 (Inglis, P.J., dissenting).) The dissenting justice concluded that exclusion of the evidence was not required under *Leon* because the arresting officer had reasonable grounds to rely on the warrant after confirming its existence by radio. 251 Ill. App. 3d at 493 (Inglis, P.J., dissenting).

We note that Justice Woodward filed a concurring opinion in the appellate court. However, that opinion was not filed until after the appellate court opinion had been filed and the State had petitioned this court for leave to appeal. As such, the appellate court was without jurisdiction to file additional comments at that time. Accordingly, we do not consider the late-filed concurring opinion and further order the appellate court to withdraw the concurring opinion.

On appeal, a trial court's determination on a motion to suppress evidence will not be overturned unless it is manifestly erroneous. (*People v. Janis* (1990), 139 Ill. 2d 300, 308.) In making this determination, we will accept the trial court's factual findings relevant to an officer's good faith unless they are against the manifest weight of the evidence. (See *People v. Schrems* (1992), 224 Ill. App. 3d 988, 996.) The purely legal question of whether the good-faith exception applies under these facts is a question of law which we review *de novo. People v. Abney* (1980), 81 Ill. 2d 159, 168.

## II. Validity of the Warrant

As a preliminary matter, we must first decide whether a second warrant issued for a single set of charges is a valid warrant. We agree with the trial and appellate courts that the repetitive warrant is invalid. Common sense dictates that issuing a second arrest

warrant on identical charges after a defendant has been arrested and released on bond produces a warrant that is invalid *ab initio*. To hold otherwise would provide police with a "pocket warrant" that could be executed at any time and place, despite the fact that the target is already subject to the jurisdiction of a court for the crime charged. In addition, such a practice undermines a citizen's constitutional right to bail. (Ill. Const. 1970, art. I, § 9.) Therefore, we find that the repetitive warrant was invalid and resulted in an illegal arrest.

### III. The *Leon* Doctrine

As the arrest warrant was invalid, we must next determine whether the evidence recovered in the resulting illegal search should be excluded. Officer Podschweit testified at the suppression hearing that he had no basis on which to stop defendant other than the arrest warrant. The State does not argue that any exception to the warrant requirement existed at the time of the search. Instead, the State argues that the evidence seized in the otherwise illegal search need not be excluded under the good-faith doctrine of *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. (See also *People v. Stewart* (1984), 104 Ill. 2d 463, 477 (adopting *Leon*); 725 ILCS 5/114—12(b)(1), (b)(2) (West 1992) (codifying *Leon*).) We therefore analyze the principles articulated in *Leon* to determine whether the good-faith doctrine should apply to the present case.

In *Leon*, the United States Supreme Court held that exclusion of evidence is not required where a police officer acts in objectively reasonable reliance on a facially valid warrant that is later found to have been invalid based on a lack of probable cause. Factually, the *Leon* case involved a drug investigation. The police presented evidence they had collected in the investigation to several assistant District Attorneys. Concluding that probable cause existed for a search, the assistant District

Attorneys assisted in drafting affidavits which were presented to a judge who issued a search warrant. The defendants in *Leon* challenged the warrant, and the Court of Appeals found that the affidavits failed to establish probable cause. On appeal to the Supreme Court, the State conceded that probable cause was lacking, but argued that the officer's good-faith reliance on a facially valid search warrant should prevent exclusion of the evidence.

The Supreme Court agreed. The Supreme Court first characterized the exclusion of illegally seized evidence as a prophylactic rule " 'designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " (*Leon*, 468 U.S. at 906, 82 L. Ed. 2d at 687-88, 104 S. Ct. at 3412, quoting *United States v. Calandra* (1974), 414 U.S. 338, 348, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 620.) Thus, the *Leon* Court noted that the question of whether to exclude evidence is a separate question from whether the search or arrest was legal. In making this determination, it is necessary to analyze whether suppression of the evidence would further the purpose of the exclusionary rule to deter future police misconduct.

The *Leon* Court determined that exclusion of evidence seized as a result of a police officer's objectively reasonable reliance on a detached and neutral magistrate's determination of probable cause would not further the deterrent purpose of the exclusionary rule. The *Leon* Court noted that the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges or magistrates." (*Leon*, 468 U.S. at 916, 82 L. Ed. 2d at 694, 104 S. Ct. at 3417.) The Court reasoned that exclusion of evidence would not deter fourth amendment violations by judges because "[j]udges and magistrates are not adjuncts to the law enforcement

team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions." (*Leon*, 468 U.S. at 917, 82 L. Ed. 2d at 695, 104 S. Ct. at 3417.) Thus, the Court focused on whether application of the exclusionary rule would deter future constitutional violations by those who are part of the law enforcement team.

The *Leon* Court determined that application of the exclusionary rule would not serve to deter future constitutional violations by the police where the officer acted in an objectively reasonable reliance on a technically invalid warrant. In support, the Court reasoned that "[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect *** it must alter the behavior of individual law enforcement officers or the policies of their departments." (*Leon*, 468 U.S. at 918, 82 L. Ed. 2d at 695, 104 S. Ct. at 3418.) As the police cannot ordinarily be expected to question a magistrate's determination of probable cause, the suppression of evidence when the police are acting on a facially valid warrant would not alter the behavior or policies of the police. Thus, the *Leon* Court allowed the illegally seized evidence to be used in the State's case in chief.

The *Leon* Court was careful to limit the contours of its ruling. The Court noted examples of instances where officers could not reasonably rely on a warrant issued by a judge or magistrate. For example, good faith on the part of the executing officer does not prevent suppression where the procuring officer knowingly or recklessly submits a false affidavit or where the affidavit does not " 'provide the magistrate with a substantial basis for determining the existence of probable cause.' " (*Leon*, 468 U.S. at 915, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 239, 76 L. Ed. 2d 527, 549, 103 S. Ct. 2317, 2332.) In addition, "[r]ef-

erences to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Leon*, 468 U.S. at 923 n.24, 82 L. Ed. 2d at 698 n.24, 104 S. Ct. at 3420 n.24.

## IV. The Lower Courts Misapplied *Leon*

Applying these considerations, we conclude that the lower courts missed the appropriate focus for determining whether to exclude the illegally seized evidence. Analyzing Officer Podschweit's conduct pursuant to the principles articulated in *Leon* is not the appropriate inquiry for determining whether to exclude the illegally seized evidence. Instead, the appropriate focus under Supreme Court precedent is to examine whether those who procured the warrant and signaled its continued validity harbored an objectively reasonable belief that the warrant was valid.

Officer Podschweit's conduct is not the appropriate focus for a *Leon* analysis because he did not procure the warrant at issue. If we were to analyze Officer Podschweit's conduct pursuant to *Leon*, we would be forced to determine whether Officer Podschweit had an objectively reasonable belief that the warrant he was executing was valid. However, this inquiry is misplaced because Officer Podschweit did not possess the warrant and did not have any knowledge of the facts purported to establish probable cause or the circumstances surrounding the warrant's issuance. (See *State v. Taylor* (R.I. 1993), 621 A.2d 1252 (finding *Leon* analysis inapplicable to arrest where executing officer had no knowledge of facts supporting probable cause in warrant).) While *Leon* allows an officer to rely on a judge's determination that facts in an affidavit are sufficient to

satisfy the probable cause standard, nothing in *Leon* allows an officer to claim a good-faith belief in the validity of a warrant based only on a radio transmission from a fellow officer. Deference to the probable cause determination of a judge or magistrate is simply not the same as deference to a police radio transmission concerning the existence of a valid warrant.

Furthermore, the *Leon* Court specifically stated that an executing officer's ignorance concerning the facts surrounding the warrant's issuance cannot shield the warrant process from scrutiny. (*Leon*, 468 U.S. at 923 n.24, 82 L. Ed. 2d at 698 n.24, 104 S. Ct. at 3420 n.24.) The Court cautioned against applying a cursory good-faith analysis that would allow a procuring officer to secure an illegal search by simply "rely[ing] on colleagues who are ignorant of the circumstances under which the warrant was obtained." (*Leon*, 468 U.S. at 923 n.24, 82 L. Ed. 2d at 698 n.24, 104 S. Ct. at 3420 n.24.) Such a process would allow the police to effectively thwart the constitutional protections provided by the warrant process. Thus, a proper application of the good-faith doctrine announced in *Leon* to the present facts requires more than an analysis of Officer Podschweit's conduct.

### V. The *Whiteley* "Source Rule" and the Proper Application of *Leon*

The proper focus for determining whether to exclude evidence where an officer executes an arrest warrant he did not procure is explained in *Whiteley v. Warden* (1971), 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031. In *Whiteley*, a judge issued an arrest warrant for the defendant based on a conclusory complaint filed by the sheriff. A bulletin was then issued to police agencies throughout the State. Relying on the bulletin and not the actual warrant, a police officer arrested the defen-

dant and found incriminating evidence inside the vehicle in which defendant was traveling. The defendant then sought to suppress the evidence because the complaint lacked probable cause. The State argued that the arresting officer should be able to rely on the assumption that the officers requesting the arrest had probable cause, therefore exclusion of the evidence was unnecessary.

The Supreme Court first determined that the warrant was issued without probable cause. Further, the Court held that the illegally seized evidence must be excluded from the State's case. The Court reasoned that while an officer executing a warrant he did not procure may "assume" that it is based on information sufficient to support probable cause, if the contrary turns out to be true, then the evidence must be excluded. The Court stated that "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." (*Whiteley*, 401 U.S. at 568, 28 L. Ed. 2d at 313, 91 S. Ct. at 1037.) In defining the contours of *Leon*, the Supreme Court noted the continuing vitality of the *Whiteley* reasoning. *Leon*, 468 U.S. at 923 n.24, 82 L. Ed. 2d at 698 n.24, 104 S. Ct. at 3420 n.24.

We recognize that there are factual differences between *Whiteley* and the present case. Unlike *Whiteley*, where the warrant was invalid because the affidavit of the procuring officer failed to establish probable cause, here the warrant was invalid because it was repetitive. In addition, in *Whiteley* it was a police officer and not the State's Attorney that procured the invalid warrant. However, both *Whiteley* and the present case involve a technically invalid warrant procured by members of the law enforcement team and executed by an officer unaware of the circumstances surrounding the issuance of the warrant. We find that the factual differences be-

tween *Whiteley* and the present case do not permit any different legal analysis.

Thus, the appropriate analysis where an officer arrests a suspect based upon a warrant obtained by someone else is to determine whether there is a valid warrant at the source. Under *Whiteley*, Officer Podschweit was entitled to "assume" that the information he received was correct and that he was executing a valid warrant. However, an otherwise illegal arrest is not insulated from challenge by the ignorance of the executing officer of the circumstances surrounding the issuance of the warrant. Therefore, the appropriate focus for determining whether to suppress the evidence is at the source of the warrant. As we have already determined, the warrant was invalid when issued. Therefore, under *Whiteley* defendant's arrest based on this invalid warrant was illegal and Officer Podschweit's good faith inapposite.

We do not imply that the good-faith analysis of *Leon* could have no application to the present facts. The appropriate focus for such an inquiry, however, is not on the conduct of the arresting officer, but on the conduct of those who obtained the warrant and informed the arresting officer of its continued vitality. The record is entirely silent in this regard. For this reason, we have no ability to determine whether the State's Attorney who sought issuance of the warrant or the sheriff's department that signaled its vitality harbored an objectively reasonable belief that the warrant was valid. Obviously, if either office was aware or should have been aware of the repetitive nature of the warrant, then such a belief could not be reasonably held.

We also note that suppression of the evidence in such a case would further the deterrent purposes of the exclusionary rule. Specifically, exclusion of evidence where the State's Attorney or the sheriff's department

may be charged with knowledge of the repetitive nature of a warrant will deter fishing expeditions and provide an incentive to keep accurate records.

Without any facts from which we can determine whether those obtaining the warrant possessed an objectively reasonable belief in the warrant's validity, we are forced to decide application of the good-faith exception on the basis of the burden of proof. As the defendant has satisfied his burden of proving a violation of his fourth amendment rights (see Ill. Rev. Stat. 1991, ch. 38, par. 114—12(a)(2)(b)), the burden shifts to the prosecution to prove that exclusion of the evidence is not necessary because of the good-faith exception. See *Leon*, 468 U.S. at 924, 82 L. Ed. 2d at 3421, 104 S. Ct. at 699.

The State, like the dissenting justice in the appellate court, erroneously limited its inquiry into the good faith of the arresting officer. The State failed to argue that the State's Attorney and the sheriff's department had an objectively reasonable belief in the validity of the warrant. Therefore, the State has failed to carry its burden of establishing good faith in the present case.

## VI. Conclusion

We hold that the arrest of defendant and the subsequent search of his automobile violated the fourth and fourteenth amendments to the United States Constitution. (See *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684.) We further hold that the State failed to adequately raise the good-faith exception to application of the exclusionary rule under the present facts. Therefore, defendant's motion to quash his arrest and suppress evidence was properly granted. The judgment of the appellate court is affirmed.

*Affirmed.*