FOURTH DIVISION
 October 17, 1996

No. 1-94-3623

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 v. ) No. 92 CR 14394 
 ) 
JOEL NWOSU, ) Honorable
 ) Marcus R. Salone,
 Defendant-Appellant. ) Judge Presiding.

 JUSTICE CAHILL delivered the opinion of the court:

 Following a bench trial, defendant Joel Nwosu was convicted
of controlled substance trafficking and possession of a
controlled substance with intent to deliver. He was sentenced to
a 24-year prison term for controlled substance trafficking. 
Citing People v. Ross, 168 Ill. 2d 347 (1995), defendant contends
the cocaine found in his apartment was inadmissible because the
search was based on an anticipatory search warrant not then
authorized by statute. Defendant also contends the State did not
prove that he knew cocaine was in the package delivered to him. 
We affirm.
 The State's evidence showed that on May 22, 1992, a United
States customs inspector discovered cocaine in a package from
Lagos, Nigeria. The package was addressed to defendant at an
address in Chicago. The cocaine was packaged in four plastic
bags hidden in the false bottom of a cloth suitcase containing
clothing and carved wood artwork. It was later stipulated that
the cocaine weighed 467.45 grams and was 73.2% pure. 
 Detective Andrew Abbott prepared a complaint for a search
warrant containing the above information. The complaint stated
that the package would be delivered to defendant's apartment and
the search warrant would be executed only if the package was
accepted. A judge issued the search warrant at 11 a.m. on June
9, 1992.
 United States Customs Agent Glenn Edin testified that he
posed as a DHL delivery man and made a controlled delivery of the
package to defendant at 1:50 p.m. on June 9, 1992. Edin said
defendant seemed anxious when he signed for the package and asked
why it took so long to have the package delivered. Defendant
told Edin he had called DHL and put a "trace" on the package. 
Edin left the apartment, then called defendant 20 minutes later
claiming that he had given him the wrong receipt. Defendant was
arrested when he left his apartment to exchange receipts.
 Agent Edin testified that he went into defendant's apartment
to photograph the evidence. Although he was not the first
officer to enter, the other officers were to keep the evidence in
place until it was photographed. Upon entering a bedroom, he saw
a suitcase with a false bottom which had been ripped out and
peeled back, exposing United States currency, documents and the
packages of cocaine. He took photographs of the suitcase and the
apartment. Edin did not find equipment for using, packaging, or
weighing drugs, and defendant's fingerprints were not found on
the packages of cocaine.
 Detective Andrew Abbott testified he saw African design
clothing and wood carvings thrown about the living room. On the
bedroom floor he saw a suitcase with the bottom torn away. 
Abbott was shown People's Exhibit No. 4, a photograph of the
suitcase, and asked exactly how the suitcase appeared when he
first saw it. Abbott stated, "It was lying on the floor with the
top open exposing the entire suitcase and the false bottom was
torn away from the bottom of the suitcase and it was lying in the
suitcase opened like this revealing the clear plastic bags of
white powder." He was then shown another photograph of the
suitcase, People's Exhibit No. 11, and asked if it accurately
depicted the suitcase. He responded, "Not at first, no" and
explained again that when he first observed the suitcase he could
see the cocaine inside. A briefcase found in a closet contained
$9,000 in United States currency. A photograph of the briefcase
showed bundles of $20 and $10 bills.
 Jerome Clemons, testifying for defendant, stated he was in
the apartment when the package was delivered. He and defendant
removed the clothing and artifacts from the suitcase, examined
them for approximately 10 minutes, then placed them back inside. 
Defendant took the suitcase to his bedroom, where he remained for
"like two seconds," before returning to the living room. At that
time, defendant was called out of the apartment by the DHL
delivery man. He returned a short time later accompanied by the
police. Clemons did not see cocaine inside the suitcase and had
never seen defendant with drugs.
 Defendant testified he was born in Nigeria and has family
there. He was a businessman who sold African clothing and
artwork and was operating the business from his home. 
Defendant's sister periodically sent him clothing and artifacts
from Nigeria, and he was expecting a shipment in June 1992. When
the package did not arrive as expected, defendant called DHL and
asked the company to put a "trace" on it. On June 9, 1992, a
package containing a suitcase was delivered to his home. After
he and Jerome Clemons examined the contents of the suitcase,
defendant put it in his bedroom and immediately returned to the
living room. He did not expect anyone to send him cocaine and
did not see cocaine or anything else hidden in the suitcase.
 In finding defendant guilty, the trial court questioned the
credibility of defendant's testimony that he did not know
anything was hidden in the suitcase, stating that the cocaine
secreted inside weighed approximately 16 pounds. The court also
stated that $10 and $20 bills are "denominations which are
commonly found in the drug community." Later, in denying
defendant's motion for a new trial, the court stated that defense
witness Jerome Clemons testified defendant was in his bedroom
with the suitcase for "at least one minute." The court then
specifically found that the officers who entered the bedroom
found the suitcase with the "false bottom exposed and the drugs
visible." The court found Agent Eden's testimony credible and
said he did not believe defendant. 
 Defendant first contends that the evidence found in his
apartment was inadmissible. He maintains that it was recovered
during a search pursuant to an anticipatory warrant and that such
warrants were not authorized by the statute in effect at the
time.
 An anticipatory search warrant is based on probable cause
that at some future time, but not presently, certain evidence of
a crime will be located at a specified place. People v. Martini,
265 Ill. App. 3d 698, 703 (1994); 2 W. LaFave, Search & Seizure 
 3.7(c), at 362 (3d ed. 1996). This court has held anticipatory
search warrants constitutional. Martini, 265 Ill. App. 3d at
707. 
 In People v. Ross, 168 Ill. 2d 347 (1995), the Illinois
supreme court held that, although constitutionally valid,
anticipatory warrants were not statutorily valid under the
language of section 108-3 of the Code of Criminal Procedure. 725
ILCS 5/108-3 (West 1992). Section 108-3 provided that, "any
judge may issue a search warrant for ***[a]ny instruments,
articles or things which have been used in the commission of, or
which may constitute evidence of, the offense in connection with
which the warrant is issued." The court found the statute was
ambiguous and could reasonably be construed as allowing
anticipatory warrants. However, relying on the committee
comments to the statute, the court held that the legislature
intended search warrants to issue only after a crime had been
committed. Ross, 168 Ill. 2d at 352-53. The statute, since
amended, effective August 18, 1995, now includes language similar
to Rule 41(b) of the Federal Rules of Criminal Procedure (Fed. R.
Crim. Proc. 41(b)), which authorizes anticipatory search
warrants. 725 ILCS 5/108-3 (West 1995 Supp.).
 Based on Ross, defendant argues that the search warrant was
void ab initio and the State was not entitled to use evidence
recovered during the illegal search. The State responds that the
officers who executed the search acted in good faith and asks
that we apply the good faith exception to the rule requiring
exclusion of evidence obtained in an illegal search.
 In United States v. Leon, 468 U.S. 897, 82 L. Ed. 2d 677,
104 S. Ct. 3405 (1984), the Supreme Court held that exclusion of
evidence is not required if the police officer acted in
objectively reasonable reliance on a facially valid warrant that
is later found invalid based on lack of probable cause. See also
People v. Stewart, 104 Ill. 2d 463, 477 (1984) (adopting Leon);
725 ILCS 5/114-12(b)(1), (b)(2) (West 1992) (codifying Leon).
 The purpose of the exclusionary rule is to deter future
police misconduct rather than to punish the errors of judges who
issue the warrants. See People v. Turnage, 162 Ill. 2d 299, 307
(1994). The question of whether evidence should be suppressed is
separate from the question of whether the search is illegal. 
Turnage, 162 Ill. 2d at 307. It is appropriate to analyze
whether the good faith exception applies even where the warrant
authorizing the search is invalid ab initio. Turnage, 162 Ill.
2d at 306-13.
 In Illinois v. Krull, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S.
Ct. 1160 (1987), the Court extended the Leon good faith exception
by holding that the fourth amendment did not require exclusion of
evidence seized by a police officer who reasonably relied, in
objective good faith, on a statute that authorized a warrantless
administrative search although the statute was later found to be
unconstitutional. In our case, the officers executed a search
warrant issued by a judge in reliance on a statute that the
supreme court in Ross conceded could be reasonably construed to
allow anticipatory search warrants. Ross, 168 Ill. 2d at 351. 
 In his reply brief, defendant asserts, without argument or
citation to authority, that the good faith of the officers is
irrelevant because "the warrant's infirmity *** lay not in the
area of constitutional law and the raison d'etre of the
exclusionary rule." We are not persuaded by this assertion. The
remedy that defendant seeks, exclusion of evidence, is rooted in
the fourth amendment protection against unreasonable searches and
seizures. We see no distinction between a good faith exception
applied to a search and seizure under the authority of a statute
later found to be unconstitutional and a good faith exception
applied to a search and seizure in reliance on a warrant based
upon a statute later found to be ambiguous. The rationale for
not enforcing the exclusionary rule--good faith reliance--exists
in either case. 
 Defendant next contends the State failed to prove he
knowingly possessed the cocaine found in the suitcase. He states
that the officers' testimony that the suitcase was found open
with the cocaine exposed was incredible, no other drug
paraphernalia was found in the apartment, his fingerprints were
not on the packages of cocaine, and he would not have asked DHL
to trace the package if he knew it contained cocaine. Defendant
also argues that the court summarized the evidence incorrectly
and relied on improper factors in finding him guilty.
 The relevant question in reviewing the sufficiency of the
evidence is whether, after viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a
reasonable doubt. People v. Nitz, 143 Ill. 2d 82, 95-96 (1991). 
Determinations regarding the credibility of the witnesses, the
weight to be given their testimony and the reasonable inferences
to be drawn from the evidence are reserved to the trier of fact. 
People v. Steidl, 142 Ill. 2d 204, 226 (1991). The trier of fact
also resolves discrepancies or conflicts in the testimony. 
People v. Harris, 220 Ill. App. 3d 848, 863 (1991). It is not
the function of this court to retry the defendant when
considering a challenge to the sufficiency of the evidence. 
People v. Boclair, 129 Ill. 2d 458, 474 (1989).
 To sustain a conviction for controlled substance
trafficking, the State must prove that the defendant knowingly
brought into this State a controlled substance for the purpose of
delivery or with the intent to deliver. 720 ILCS 570/401.1 (West
1992). The element of knowledge is rarely susceptible of direct
proof and may be established by evidence of acts, declarations or
conduct of the defendant which support the inference that he knew
of the existence of narcotics at the place they were found. 
People v. Pintos, 133 Ill. 2d 286, 292-93 (1989).
 Here the trial court believed the testimony of the officers
who stated they found the suitcase in defendant's bedroom with
the false bottom torn open and the cocaine exposed. Defendant
argues that a photograph which purportedly showed the false
bottom intact rendered the officers' testimony incredible. 
Detective Abbott, when questioned about the photograph, testified
that it did not accurately depict the suitcase as it appeared
when he first observed it. Assessing the credibility of the
witnesses is a function reserved to the trier of fact, which is
in a much better position to do so than a court of review. We
will not disturb the court's determination on this basis.
 Defendant next argues that his fingerprints were not found
on the packages of cocaine and no drug paraphernalia was found in
his apartment. Again, this is a challenge to the sufficiency of
the evidence. In light of the specific facts of this case, the
absence of drug paraphernalia and fingerprints does not serve to
create a reasonable doubt of defendant's guilt. Defendant also
maintains that he would not have requested DHL to trace the
package if he knew it contained an illegal substance. This is an
inference left to the trier of fact. This is a risk defendant
may have been willing to take.
 Finally, defendant focuses on statements made by the trial
court at the end of trial and after the hearing on the post-trial
motion to argue that the court's findings were not supported by
the evidence. These statements involve the weight of the
suitcase as bearing on defendant's testimony that he did not know
anything was hidden inside, the court's incorrect recollection
that Clemons testified defendant was in the bedroom for one
minute rather than two seconds, and the court's statement that
$10 and $20 bills are denominations favored by the drug
community. 
 A reading of the trial court's findings shows that he based
his determination of guilt primarily upon the testimony of the
officers who delivered the package to defendant and returned 20
minutes later to find the false bottom of the suitcase torn open,
exposing the cocaine. The officers also found $9,000 in currency
in a briefcase in the apartment. The court was not required to
accept defendant's argument that the money could have come from
cash sales of African clothing and artwork. A large amount of
cash in close proximity to narcotics supports the inference that
the drugs were possessed with intent to deliver. See People v.
Torres, 200 Ill. App. 3d 253, 266 (1990). With respect to the
court's statements, we find nothing improper in the consideration
of the weight of the suitcase. The comment concerning the amount
of time defendant was in his bedroom with the suitcase was made
to show that, even accepting the defense testimony, defendant had
the opportunity to discover the cocaine. We are not persuaded
that the court's incorrect recollection of the exact duration of
time Clemons' said defendant was in his room had a bearing on the
conviction. The same is true of the court's comments concerning
the denominations of currency commonly used in the drug
community.
 Accordingly, the judgment of the circuit court is affirmed. 
Pursuant to People v. Nicholls, 71 Ill. 2d 166 (1978), we grant
the State's request for $100 in costs for defending this appeal
and incorporate it as part of our judgment.
 Affirmed.
 THEIS and S.M. O'BRIEN, JJ., concur.