THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NORVAL W. WELLS, JR., Defendant-Appellee.

Fifth District    No. 5—96—0076

Opinion filed February 7, 1997.—Rehearing denied March 3, 1997.

HOPKINS, J., dissenting.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

PRESIDING JUSTICE KUEHN delivered the opinion of the court:

This case features an application of the exclusionary rule to a pair of shoes acquired from defendant's home. The search of the home that produced the shoes may have violated defendant's right to be free from unreasonable search and seizure. Then again, the search may have been entirely reasonable. The constitution's plan for reasonable searches, those made with judicial approval, may have been honored to perfection. No one really knows.

We do know that on August 4, 1967, the Alton police entered and searched defendant's home. The sole vestige of that search is a pair of brown leather dress shoes. Other items seized cannot be found. The trial court's suppression of this pair of shoes has stayed progress on this prosecution for over four years. This is the State's second appeal to free the shoes from an order prohibiting their use. See *People v. Wells*, 273 Ill. App. 3d 349, 652 N.E.2d 845 (1995).

This case presents us with a search, the legality of which cannot be known. It also presents us with an order excluding evidence absent any known wrong. The case, unlike any other to be found, has generated divergent views. The trial court has grappled with its uncommon traits, traversed uncharted ground, and concluded that evidence must be suppressed. We are not so sure.

The State insists that this search honored the dictates of the constitution. It claims that the evidence was seized pursuant to the commands of a validly issued search warrant. Normally, the State would accompany such a claim with the documents used to procure the warrant, as well as the warrant itself. What sets this case apart is the State's inability to produce any of the paperwork used in the warrant process to prove its claim. The State no longer has the complaint to search or the search warrant itself. Moreover, no one has a copy of either document. All recorded search warrants filed in Madison County prior to 1977, including the one used in this case, have disappeared.

The disappearance of the filed originals, the absence of any preserved copies, and the toll of time on human recall create a unique evidentiary abyss from which no determination of the search's legality can be made. The State cannot attest to the validity of the search warrant. It cannot be certain that the warrant was supported by an affidavit stating probable cause. Nor can it be certain that the warrant particularly described the place to be searched or the items to be seized. Conversely, defendant can only speculate that the search warrant was defective. He cannot demonstrate that it was issued on application that failed to state probable cause.

We must confront the singular circumstances of a case where the original search warrant, the complaint by which it was procured, and all of their copies are missing. The State seeks to restore the lost or destroyed search warrant without any facsimile to demonstrate what it once said. There is not a single document available to attest to the warrant's existence, much less its contents.[1]

Contrary to the State's assertion, the issue here is not whether

---

[1] A copy of an unsigned complaint to search defendant's home was found

the trial court abused its discretion in refusing to restore the search warrant as a lost or destroyed record. An order restoring the search warrant pursuant to the Court Records Restoration Act (705 ILCS 85/1 *et seq.* (West 1992)) would only recognize and restore what once existed. The contents of the missing warrant, and the complaint by which it was procured, define whether the search complied with the constitution. An order declaring the missing records restored, without knowledge of their contents, would not validate the search. The question of whether the complaint articulated probable cause would still endure. The question of whether the warrant particularly described the place to be searched or the items to be seized would also endure.

After 30 years, the warrant's precise contents are virtually unascertainable. The warrant's precise legal worth, a conclusion to be gleaned from those contents, is equally unascertainable. Thus, the ability to measure the legality of this search was, for all practical purposes, lost with the papers that once articulated reasons for the warrant's issuance and the scope of its authority.

Nevertheless, the legality of the search is not the proper inquiry in this case. The issue of a search's legality is separate and apart from the issue of whether evidence must be excluded. *People v. Turnage*, 162 Ill. 2d 299, 309, 642 N.E.2d 1235, 1239 (1994). When a search is made pursuant to a search warrant, the precise contents of which are unknown, a separate question arises. It features a look at the officers' reliance upon that warrant rather than the warrant's validity.

The overriding question here is whether the conduct of the officers involved in the procurement and execution of this warrant calls for the exclusion of evidence.

The ruling below requires us to first review whether the evidence heard established that a warrant was indeed used to search defendant's home. The trial court found a lack of credible evidence to establish that a search warrant ever existed. Since the only justification tendered in support of this search was the use of a search warrant, the disavowal of its existence would control the outcome and require the result reached.

Our earlier opinion reversed a similar suppression order, remanded for an evidentiary hearing, and directed the trial court to determine whether the exclusion of evidence was a suitable remedy. *Wells*, 273 Ill. App. 3d at 353, 652 N.E.2d at 848. Our direction rested entirely upon the premise that the search warrant's existence was beyond dispute.

---

but never authenticated as a duplicate of the application by which the search warrant was procured.

The trial court's earlier order granted defendant's motion to suppress. The order was entered on the pleadings without the submission of evidence. Therefore, the earlier order granted only that relief requested in the motion to suppress.

Defendant's earlier motion, the sole basis for the order, sought *to quash the search warrant* and *to suppress certain items seized during the execution of said warrant.* The motion did not assert that the police conducted a warrantless search. To the contrary, it alleged that the challenged search was conducted *pursuant to a search warrant.* The basis for the relief requested was a series of allegations about the validity of the search warrant. It alleged defects in the warrant itself, defects in the complaint by which it was procured, and defects in its execution. Defendant earlier prevailed on *a motion that asserted the existence of a search warrant* and confined its challenge to the warrant's deficiencies.

Justice Hopkins, noting the lack of dispute over the use of a search warrant, directed an evidentiary hearing to determine whether the search was conducted in good faith. *Wells,* 273 Ill. App. 3d at 352, 652 N.E.2d at 848, citing *People v. Turnage,* 162 Ill. 2d 299, 642 N.E.2d 1235 (1994), citing *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984).

On remand, the good-faith exception was never reached. Before evidence was taken, the trial court corrected our view of its earlier ruling. It declared the basis of the search undetermined and at issue. The factual question of whether a search warrant ever existed became the focus of the hearing. After evidence was heard, the trial court found that the State failed to prove, in credible fashion, that a search warrant ever existed. The warrant's physical absence was obviously critical to this determination. Since no warrant was in existence, it was inferred that no warrant ever existed. The failure to prove the use of a search warrant rendered the officers' state of mind immaterial. There was no reason to reach the question of good faith.

The hearing did not proceed on the allegations set forth in defendant's motion. Rather, defendant tendered the theory that his home was subjected to a warrantless search. Defendant presented witnesses who tried to find the paperwork pertaining to this search. Each witness testified that his or her efforts were to no avail. Defendant thereby established that the search warrant, and its accompanying documentation, were nowhere to be found. This was offered to prove that a search warrant never existed. Defendant inferred from the documentary void that the search of defendant's home was a warrantless search.

No one testified that defendant's home was searched without a search warrant.

The State thus confronted a task that was not contemplated when this case was remanded. In the absence of any paperwork to prove that a warrant ever existed, the State had to establish that it did.

Unquestionably, the passage of time has taken its toll on the evidence in this case. But for a few remnants, the search itself would be locked in the past, forgotten and unchronicled. An aged pair of dress shoes, some faded handwritten notes, a few sentences in a police report, and the recollections of a now retired lawman are all that mark a distant summer's day when defendant's home was entered and searched. Even the hand that authorized this search has been lost. Judge Harold Gwilliam, who affixed his signature to the warrant and issued its commands, died in 1990.

The State met this seemingly arduous task with ease. It presented irrefutable evidence of the warrant's procurement, issuance, and execution. Retired detective John Light testified that he presented a signed complaint for the search of defendant's home to Judge Gwilliam, who thereafter issued a search warrant. Light's handwritten notes and police report, made contemporaneously with the search, were admitted. The notes and report confirmed Light's memory. Light detailed the execution of the search warrant. He recalled that it was served upon defendant's son, Terry Wells. Defendant did not produce Terry Wells to refute any of Light's testimony. Not one shred of evidence supported the notion that the police conducted a blatantly warrantless search of defendant's home.

Common sense instructs that Light did not fabricate the warrant's existence. Any effort to conceal a lawless search would avoid the recordation of an executed search warrant and the judge who issued it. To conclude that a warrant never existed, that its recordation was merely an effort to conceal a warrantless search, infers Light's reliance on judicial complicity. Light would need Judge Gwilliam to support his fabricated warrant. Moreover, it presumes Light's anticipation of the extraordinary events that have accompanied this case, events over which he had no control. Light would know that the courts, under normal circumstances, would want the warrant produced. They would expect it to bear Judge Gwilliam's signature. They would also expect other agencies to have copies. The inescapable conclusion, Light having reported the procurement of a warrant from Judge Gwilliam, is that Light reported the truth. He sought, obtained, and used the search warrant that he made a part of his 1967 report.

■ Light's contemporaneous report on the search credits testimony which itself stands uncontradicted. Where the warrant's absence is met by positive testimony of its earlier existence, cor-

roborated by reliable notes and reports made contemporaneously with the search, such evidence should not be disregarded. See *Quock Ting v. United States*, 140 U.S. 417, 420-21, 35 L. Ed. 501, 502, 11 S. Ct. 733, 734-35 (1891). This is particularly true where, as here, the testimony is neither contradicted nor inherently improbable. *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85, 430 N.E.2d 1126, 1127 (1981).

This was not a warrantless search. The uncontradicted evidence establishes that a search warrant existed and was used to effect the search.

The use of a search warrant directs a path to two remaining questions. First, it must be determined whether the State, having established that a search warrant was issued and used to effect the search, carries any further burden to prove its content and the basis for its issuance. Because we think it does, because the State must establish the requisite good faith, we need to examine whether such a showing can be made where the search warrant is missing and its contents are thus unknown.

■ The good-faith exception to the exclusionary rule evokes a different perspective about the uncertainty that envelops this search. Under the exception, even though we have no way of knowing that the search was invalid, we can assume the worst. We can assume the warrant deficient in particulars required for validity. See *Massachusetts v. Sheppard*, 468 U.S. 981, 987-89, 82 L. Ed. 2d 737, 742-44, 104 S. Ct. 3424, 3427-28 (1984). We can also assume a deficient probable cause showing. See *Leon*, 468 U.S. at 919-21, 82 L. Ed. 2d at 696-97, 104 S. Ct. at 3418-19. Even if the missing complaint and warrant were invalid, the search's yield is admissible, provided that the requisite good faith existed.

*Leon* does not obviate the exclusion of evidence simply because the police have used a search warrant to effect a search. Were it so, our analysis could end here. *Leon* held that the exclusion of evidence is without deterrent value, and therefore unnecessary, where an officer acts in *objectively reasonable reliance on a facially valid warrant* that is later found to have been issued without probable cause. *Leon*, 468 U.S. at 918, 82 L. Ed. 2d at 695-96, 104 S. Ct. at 3418. While the *Leon* rule extends to warrants issued with insufficient particularity in description (*Sheppard*, 468 U.S. 981, 82 L. Ed. 2d 737, 104 S. Ct. 3424), violations relating to the execution of the warrant exceed the scope of the exception.

■ The Supreme Court carefully contoured the rule. It cautioned that it was not suggesting "that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms." *Leon*, 468 U.S. at 922, 82 L. Ed. 2d at 698, 104 S. Ct. at 3420.

It then declared that exclusion is still called for whenever the officer lacks "reasonable grounds for believing that the warrant was properly issued." *Leon,* 468 U.S. at 923, 82 L. Ed. 2d at 698, 104 S. Ct. at 3420. This encompasses several situations. Reliance upon the warrant would not be "objectively reasonable" if: (1) the affidavit was based upon knowingly or recklessly made falsehoods; (2) the issuing magistrate wholly abandoned his judicial role; (3) the warrant was so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officer could not reasonably presume it to be valid; or (4) the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. The limitations to the exception illustrate the additional hurdle confronting the State. There is no search warrant to evidence the minimal sufficiency necessary to permit police to presume validity. There is no complaint to search or affidavit to evidence the factual sufficiency necessary for reasonable reliance on a judicial determination of probable cause.

Under ordinary circumstances, defendant must first establish that the warrant was invalid before the burden shifts to the State to establish the minimal compliance necessary to fit the good-faith exception. Hence, it could be argued that since a search warrant was the basis of this search, and defendant failed to prove its invalidity, no further inquiry is necessary. Unlike cases that apply the good-faith exception, our case lacks certainty that the constitution was violated. Defendant has not established that there was anything wrong with the application process or the warrant itself. He alleged all manner of defects in the warrant procedure, but he proved none.

It is not surprising that defendant opted to challenge the historical existence of the warrant, rather than pursue the assertions contained in his motion. The disappearance of the complaint and warrant disabled defendant's ability to mount a challenge to the warrant process. Defendant can hardly be expected to establish an insufficiency in a complaint or a defect in a warrant he has never seen and cannot now examine.

The disappearance of all paperwork, originals and copies, in effect precludes defendant's ability to challenge the validity of the missing warrant. We cannot permit the paperwork's disappearance to automatically validate the search, anymore than we can declare that the disappearance automatically invalidates it. If all the State had to prove was the mere historical existence of a warrant, if the paperwork's disappearance removed all burden with regard to its contents, there would be no incentive to preserve and maintain the

means to assure constitutional compliance in the warrant process. Since the absence of the warrant papers would effectively foreclose challenge to an unconstitutional search, defendant cannot be called upon to carry any burden when warrant papers completely disappear.

■ Therefore, where the State has lost all papers (originals and copies) associated with a search pursuant to a warrant, the State must do two things. First, it must provide a reasonable explanation for its inability to produce the paperwork associated with the search. Then, it must show why evidence obtained as a result of such search should be admissible. It must show that a reasonable officer could believe in the validity of the missing warrant, based upon its contents. It must also show that the officers honored the limits of the missing warrant when executed.

The State carries this burden. To assign defendant the burden of proving the invalidity of missing documents, before requiring the State to act, would be outcome determinative. It would send a decidedly wrong message to the caretakers of warrant papers. The paperwork associated with a search should be carefully preserved. Its complete disappearance has never been, nor should it become, commonplace.

We emphasize that the State need not establish the validity of the missing warrant. It need only establish that a search warrant was used, that the officers who obtained it and those who used it possessed the requisite good faith, and that the warrant was properly executed.

The trial court was sensitive to the unprecedented problems of proof that the circumstances of this case present. It repeatedly referred to the absence of credible evidence and pronounced, in both suppression orders, that search warrants *must* be preserved.

Search warrants, the complaints by which they were procured, and copies of such documents *should* be preserved. However, the inadvertent loss of a search warrant and its accompanying documentation is not automatically fatal to the search or its yield. A catastrophic destruction of the courthouse and records housed there would not compel the exclusion of all evidence obtained by use of the destroyed search warrants. A challenge to a search no longer supported by its paperwork could be met by the submission of testimony in lieu of documents. The State could present a reasonable explanation for its inability to produce originals and copies of the warrant process. It could then present testimony to establish that a search warrant was used, that the officers who obtained it and those who used it possessed the requisite good faith, and that the warrant was properly executed.

In a given case, the absence of the original complaint and search warrant, coupled with a lack of any copies, could call for an inference that facially defective paperwork was deliberately destroyed. In a given case, the unexplained disappearance of every paper, original and copy, from the files of different caretakers, could itself constitute significant proof of an unreliable warrant process. This, however, is not such a case.

■ We think it reasonable to conclude that documents generated as a part of this search were not culpably destroyed. The disappearance of the filed originals from the clerk's office accompanied the disappearance of all like documents filed prior to 1977. The complete obliteration of all similar records suggests a mass purge rather than a selective act. There is nothing to suggest that the purge was motivated by a desire to destroy potential evidence. It is unlikely that someone destroyed every warrant prior to 1977 to conceal the contents of the warrant used in this 1967 search. More likely, the records were destroyed by some blameless clerk in need of storage space, someone who thought their usefulness had long since expired.

The disappearance of copies is equally understandable. This was a closed investigation for decades. There was not a glimmer of hope that the case would ever be solved. The individuals with reason to maintain copies had reason over time to believe that their usefulness had expired. When those individuals retired, their successors in office would treat copies of closed investigations as worthless clutter. It is particularly uneventful, given the passage of time, that the States Attorney's office cannot find a copy of this warrant or the complaint by which it was procured. When offices change hands, matters deemed closed may be reviewed and reopened. If not reopened, paperwork that merely duplicates filed originals is apt to become a prime house-cleaning target. The office of the Madison County State's Attorney has changed hands six times, has operated out of several different offices, and has engaged in countless investigations over the past 30 years. It is not surprising that copies cannot be found.

The circumstances simply do not compel an inference that the disappearance of the paperwork was anything but inadvertent. The circumstances suffice to explain the State's inability to produce the paperwork associated with this search.

We know that a search warrant was used to effect this search and that its loss was inadvertent. Therefore, if the dress shoes were taken pursuant to the warrant's commands, and if the officers involved in the procurement and execution of the warrant possessed the requisite good faith, excluding this evidence would not contribute to the deterrence of future constitutional violations.

When officers try to do that which the constitution favors, when they seek and obtain court approval to conduct a search, the fruit of their labor should not be lost without an opportunity to show that they acted in good faith. Since our earlier opinion provided scant guidance, and the hearing that ensued lost aim of our request to determine the officers' good faith, we remand to allow the State to present additional testimony. Since we are benefited by what has already transpired, we can further limit future proceedings.

The question of "requisite good faith" is not a subjective inquiry. The test is "objectively reasonable reliance." The State must establish more than Detective Light's belief in the validity of the warrant and his reliance upon it, although his belief is an element of the required proof. The State must establish that such a belief, if held, would have been shared by any reasonable officer who would have obtained or executed this warrant.

We believe that the State has already reconstructed enough of the warrant's contents to establish presumptive validity. It must still reconstruct enough of the application's contents to establish that reliance on Judge Gwilliam's determination of probable cause would be reasonable.

The missing paperwork does not foreclose an attempt to establish the requisite good faith through testimony. As we previously noted, the warrant's precise contents are unascertainable. After 30 years, recollection of intricate detail is not to be expected. However, the precise content of the missing documents is unnecessary to establish the requisite good faith. The State need only show enough, through the testimony of those who recall matter contained in the missing documents, to demonstrate why Detective Light could reasonably rely upon Judge Gwilliam's probable cause determination and presume the warrant to be valid. Only a minimal showing is necessary.

With regard to reliance upon Judge Gwilliam's probable cause determination, we find it significant that probable cause indeed existed to obtain the missing warrant.

The testimony and exhibits presented at the earlier proceeding established that the homicide victim was likely shot with his own gun while inside his automobile. He was found slumped in the passenger's seat with a .25-calibre slug in his head and a .25-calibre casing in the backseat. He was known to keep a .25-calibre automatic pistol in his glove compartment. The pistol was missing. The police suspected that he was killed with his own gun, at close range, by someone with whom he was acquainted. They had good reason to believe that the killer's clothing would be splattered with the victim's blood.

The defendant was the last known person to see the victim alive. The two had visited a prostitute the night before the victim was found slain. The next day, police asked to see the clothing defendant wore that night. Defendant willingly produced the shirt, pants, and shoes he claimed to have worn. Shortly thereafter, both defendant's son and the prostitute told police that defendant had surrendered the wrong shirt. Detective Light was justified, under the circumstances, in seeking a warrant to search defendant's home for the missing gun and the true clothing worn the night of the murder. The police had probable cause to search for and seize other clothing that might harbor remnants of the victim's blood. There was a substantial basis for finding probable cause, provided that basis was presented.

Since this state of affairs produced the desire to conduct a search of defendant's home, it seems unimaginable that Detective Light would not have disclosed it to Judge Gwilliam. Nevertheless, there is no complaint or affidavit to tell us what was presented. Therefore, the State must reconstruct enough of what was conveyed to Judge Gwilliam to accommodate Light's reasonable reliance upon Judge Gwilliam's determination of probable cause.

Whether the complaint to search, signed by Detective Light and acted upon by Judge Gwilliam, articulated enough of these facts to allow Light to reasonably believe it stated probable cause is a line of inquiry that was not previously pursued. Light cannot be expected to recall the content of the missing complaint or affidavit in great detail. He did, however, recall that the warrant listed clothing as an item to be seized. If the complaint articulated those facts that created a need to seize and examine defendant's other clothing, it contained sufficient information for Light to reasonably believe that it stated probable cause. It may, in fact, have stated probable cause.

With regard to the warrant's facial sufficiency, Light has already testified that the warrant commanded the search of defendant's home and was executed at the proper address. This testimony is undisputed. He also insisted that the warrant authorized the seizure of defendant's clothing. Since defendant's apparent deception about his clothing sparked the desire to see if any of defendant's shirts, pants, or shoes harbored the victim's blood, since his production of the wrong clothing was the impetus for the warrant's procurement, it is reasonable to infer that the warrant would authorize a search for all other clothing. Under the circumstances, "clothing" would constitute sufficient particularity. Light's testimony demonstrates that the warrant was not so facially deficient as to remove a presumption of validity.

In most cases where good faith is tested, a known constitutional

wrong in the warrant process has occurred. In this case, there is nothing upon which to base a conclusion that Light engaged in any constitutionally forbidden conduct. It is only the complete absence of warrant papers, including copies, that requires the State to show that the warrant relied upon was sufficient.

The uncommon circumstances of this case call for a circumspect use of the exclusionary rule. The most salient reason to exclude otherwise relevant evidence has not been shown and may not exist. Any error of constitutional dimension, assuming one occurred, was an error that escaped the discerning eye of a judge. The police were simply trying to obey the constitution's commands.

The evidence presented sufficiently established an objective basis for Detective Light to presume the warrant to be valid. If the State can present evidence to support reasonable reliance upon Judge Gwilliam's probable cause finding, and to show that his warrant was properly acted upon, the search's yield should not be suppressed.

Finally, the suppression was premised, in part, on concern for the integrity of the constitution's warrant requirement. The officers' good faith, if it existed, will not denigrate this provision of the fourth amendment. The integrity of the warrant requirement, written into the fourth amendment, will endure. In fact, an enshrined preference for the use of warrants contributes to our embrace of the good-faith exception.

The good-faith exception limits application of the exclusionary rule in the face of imperfection. It thereby promotes the procurement of warrants by supporting their purpose despite defects in the warrant process. Conversely, various exceptions to the warrant requirement promote bypass of the warrant process. Such exceptions invariably compel a desire to rely upon means to search removed from the wisdom of a neutral and detached magistrate.[2]

Those in the business of searching need to appreciate that the procurement of a constitutionally preferred warrant assures support for the use of items seized pursuant to its commands. They need to appreciate that such support transcends a flawless effort. They need to know that the best way to assure the efficacy of a search is to convince a judge to issue a search warrant.

---

[2]See *People v. Carter*, 284 Ill. App. 3d 745, 672 N.E.2d 1279 (1996). In *Carter*, officers who possessed probable cause to obtain a warrant opted for illegal entry into a home. The officers usurped hospitality not conferred, perused private mail and reading materials, and waited several hours at the kitchen table for the homeowners to return from work. Rather than obtain judicial approval to search, they preferred to greet the owners upon their arrival home, invite them in, and ask their consent to search.

At a time when the constitution's warrant requirement diminishes as exceptions to the rule expand, at a time when law enforcement officers study methods to circumvent a warrant's use, the good-faith exception provides solid encouragement to employ the warrant process for all arrests and searches that are not made on an emergency basis.

This search may have involved exemplary police work. Even if it did not, the effort was to obtain judicial approval to search. A suppression of evidence to remedy an inadvertent loss of paperwork, untied to the actions of the officers involved, not only fails to contribute to the deterrence of future constitutional violations but implants further incentive to avoid the use of warrants. It encourages the use of methods that do not generate paperwork or its storage in order to assure the search's value. We think our founding fathers would rather prefer a rule of law that promotes the use of warrants to one that punishes their inadvertent loss.

Reversed and remanded.

GOLDENHERSH, J., concurs.

JUSTICE HOPKINS, dissenting:

The majority relies upon the defendant's previous concession that a warrant existed and upon the faulty presumption that we know that probable cause existed to obtain that warrant. To find this "knowledge" of probable cause, the majority relates facts that were the product of what the "investigation developed." However, the investigation was determined by the trial judge below to be incredible. In fact, the trial judge found:

> "[N]o credible evidence was adduced at the hearing that would support the allegations in the complaint for search warrant. *** [I]t is further the ruling of the Court that the warrant cannot be restored where there is no credible evidence as to its contents."

In the light of these findings by the trial judge, who heard and witnessed the testimony, and who evaluated the demeanor of retired detective John Light, the majority decides that the State presented irrefutable evidence of the warrant's procurement, issuance, and execution. Any "good faith" exception that relies on what the trial court finds to be incredible ought not be sanctioned by a court of review.

If the fourth amendment requires a warrant, and if we permit the restoration of a warrant with incredible evidence, when no physical warrant exists, then I must agree with the trial judge that to reverse this decision "would undermine the integrity and reasoning of

the Fourth Amendment." We sent this cause back after the first appeal to assure the State its right to an evidentiary hearing. A hearing was conducted, and the trial court made its findings. Based upon the record before us, there is no good cause to reverse those findings, and I respectfully dissent.