(No. 54430.—

THE PEOPLE *ex rel.* IDA BROWN, Appellee, v. RONALD BAKER, Appellant.

*Opinion filed December 18, 1981.*

82

Tim Eaton, of Decatur, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Myra Turner, Assistant Attorney General, of Chicago, of counsel), for the People.

JUSTICE UNDERWOOD delivered the opinion of the court:

This is an action brought under the Paternity Act (Ill. Rev. Stat. 1977, ch. 40, par. 1351 *et seq.*) in which plaintiff, Ida Brown, charged the defendant, Ronald Baker, with fathering her daughter born out of wedlock on November 21, 1978. The defendant answered the complaint denying paternity, and a jury subsequently returned a verdict of not guilty. The trial court denied a post-trial motion for judgment *non obstante veredicto,* and the appellate court, in a Rule 23 order (73 Ill. 2d R. 23), finding that the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510) had been met, reversed and remanded with directions that the trial court enter judgment in favor of the plaintiff notwithstanding the verdict. (89 Ill. App. 3d 1207.) We allowed defendant's petition for leave to appeal under Rule 315 (73 Ill. 2d R. 315).

There is no apparent conflict between the testimony of the parties regarding their sexual intimacy during the probable period of conception. Defendant was called as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). He testified that he first met plaintiff in high school but did not begin seeing her socially until 1977 or 1978. They dated for about three months and had intercourse frequently with neither party using any contraceptives. Usually he visited plaintiff at her apartment, although she also went to his apartment a few times. During the same period he was dating two other women, with one of whom he was intimate on a weekly basis. The last time plaintiff and he had intercourse was in March 1978, which was the same month that defendant's fiance, whom he later married, returned from Holland. He first learned plaintiff was pregnant at the end of March 1978. On redirect examination by his own counsel, when asked whether plaintiff ever mentioned the name of David Dawson, defendant replied: "Yes, *** she mentioned his

name as a personal friend. She said that he dated her sister several years ago and that is about it."

Plaintiff testified that she began dating defendant in November 1977. They initially saw each other once or twice a week but spent the entire weekends together from January 1978 through March 1978. She last menstruated in February 1978, and after a full-term pregnancy her child was born in November. She testified that she was not dating anyone else, and that she did not have intercourse with anyone else. She indicated that she knew David Dawson because her sister had dated him for about three years, but that she and Dawson were never intimate. Rather, they were like brother and sister. She cleaned his apartment in 1975 or 1976 and had been with him and others on social occasions in the past. Plaintiff also stated that before the baby was born defendant agreed to pay child support, and that after the baby's birth defendant admitted that he was the father and on one occasion visited her and the baby. Defendant did not refute this testimony.

Three other witnesses testified on behalf of the plaintiff. They basically stated that they had seen plaintiff and defendant socially between November 1977 and March 1978. On cross-examination, two of the three witnesses indicated that they knew plaintiff and Dawson were friends.

The defendant called David Dawson as a witness. He testified that he had known plaintiff for about eight years, having met her through her sister, whom he used to date. He further stated that she was like a sister to him, and when asked whether he had intercourse with her, he replied that he did not.

In denying plaintiff's motion for judgment *n.o.v.*, the trial judge made the following statement:

"Personally I think if this had been a court trial that I heard on my own I would have found different from the jury, but *** I have trouble with what Mr. Eaton

brought out about credibility of the witnesses. As I recall, David Dawson was the type [that] struck me he wouldn't look anybody in the eye type and, of course, Ida Brown was a little 'flakey' is a good word for her. That is the one stumbling block that I have is just what did the jury see in those witnesses. Maybe it wasn't what they said but how they were saying it, I don't know, and that is the real problem I have is the credibility of the witnesses which I think basically you can't substitute your judgment for that of the jury on the question of credibility."

While we agree that the credibility of witnesses and the weight to be accorded their testimony are typically jury considerations (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309-10; *Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 436; *People ex rel. Gomez v. Wedech* (1978), 58 Ill. App. 3d 518, 520), a jury cannot arbitrarily or capriciously reject the testimony of an unimpeached witness (*Larson v. Glos* (1908), 235 Ill. 584, 587; see also 81 Am. Jur. 2d *Witnesses* § 660, at 662-63 (1976)). Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury. *Larson v. Glos* (1908), 235 Ill. 584, 587; see also *Urban v. Industrial Com.* (1966), 34 Ill. 2d 159, 163; *Dill v. Widman* (1952), 413 Ill. 448, 454.

Notwithstanding the trial judge's remarks regarding plaintiff's "flakiness" and Dawson's lack of eye contact, there is no evidence in this record that would justify a jury in discrediting plaintiff's testimony that she did not have sexual relations with any other male during the critical period. If the trial judge intended his reference to plaintiff as "a little flakey" to indicate a slightly abnormal mental condition, we can say only that this record contains no indication thereof. Plaintiff's testimony, so far as the record is concerned, was rational, reasonably consistent, and certain. She was positive in her denial of any intimacy with

Dawson. Whatever prompted the judge's comment apparently did not affect his acceptance of her testimony, for he believed his judgment would have differed from the jury's. While demeanor is undoubtedly an important consideration, and a jury is ordinarily free to disbelieve the testimony of any particular witness, "it may not make an affirmative finding that the exact opposite of [a witness'] testimony is true if there is no evidence to support such a finding." (30 Am. Jur. 2d *Evidence* § 1080, at 227 (1976).) Even when viewed in its aspect most favorable to the defendant, the evidence that the plaintiff was a good friend of Dawson's and cleaned his apartment once or twice can hardly be characterized as proof of an intimate relationship. We do not doubt that a defendant in any paternity case could produce evidence that the plaintiff had the "opportunity" to engage in sexual relations with other men. But such evidence, standing alone, without some other evidentiary support for an inference that the opportunity was utilized, falls far short of proof of sexual relations with other men. See *Kennedy v. Kennedy* (1981), 93 Ill. App. 3d 88, 92 ("seeing" other men insufficient to prove sexual intimacy); *People ex rel. Walsh v. Kilbride* (1974), 16 Ill. App. 3d 820, 823 ("keeping company" somewhat short of intimate relations); *cf. State ex rel. Stollberg v. Crittenden* (1966), 29 Wis. 2d 413, 139 N.W.2d 94.

In view of the admittedly existing intimate relationship between plaintiff and defendant during the period of conception, the absence of any testimony from which the jury could reasonably infer that plaintiff had sexual relations with anyone other than defendant during the critical period, and the absence of any evidence that tended to cast doubt on plaintiff's credibility, we conclude that the evidence overwhelmingly supported plaintiff's allegation that defendant is the father of her child, and that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

The judgment of the appellate court reversing and remanding to the circuit court of Macon County for the entry of a judgment *n.o.v.* in favor of the plaintiff is accordingly affirmed.

*Judgment affirmed.*