Docket No. 83030–Agenda 6–January 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. NORVAL W. WELLS, JR., Appellant.

Filed May 29, 1998

JUSTICE McMORROW delivered the opinion of the court:

In 1992, the State filed an indictment against the defendant, Norval W. Wells, Jr., alleging that defendant murdered John Hale, Sr. in 1967. Defendant moved to suppress evidence seized from defendant's residence in 1967. The circuit court granted the motion and the appellate court reversed and remanded for an evidentiary hearing. 
People v. Wells
, 273 Ill. App. 3d 349 (1995). On remand, the circuit court again granted the motion to suppress and the appellate court again reversed. 
People v. Wells
, 286 Ill. App. 3d 692 (1997). Defendant appealed the second appellate court decision to this court, pursuant to Illinois Supreme Court Rule 315(a) (166 Ill. 2d R. 315(a)).

BACKGROUND

On November 19, 1992, a grand jury returned an indictment against defendant, charging him with first degree murder. The indictment alleged that defendant shot decedent John Hale, Sr., in the head on July 30, 1967, causing Hale's death.

Defendant filed a motion to suppress evidence on March 24, 1993. Defendant urged the circuit court to suppress any evidence seized pursuant to a search warrant. He maintained that the State could not prove the existence of a warrant, and that the State could not prove that a criminal complaint in support of a warrant had been filed.

The State's response included a written offer of proof that on August 4, 1967, Lieutenant John Light of the Alton police department signed a complaint for a search warrant before Judge Harold Gwilliam of the circuit court of Madison County. The judge supposedly issued a search warrant, authorizing a search of Wells' residence for a .25-caliber Beretta handgun.

The State asserted that Light served the warrant on Terry Wells, defendant's son, at defendant's residence on August 4, 1967. No handgun was located on the premises, but at the conclusion of the search, Light asked Terry to find his father's shoes and give them to Light. According to the State, Terry located and surrendered the shoes “and other items” without objection.

The offer of proof contained additional averments that the original complaint for the search warrant, the warrant and the return of warrant could not be located. Nevertheless, the State contended that the search of Wells' home in 1967 was not unlawful and that the fruits of that search should not be suppressed. In the alternative, the State argued that the police received the consent of Terry Wells to “take” defendant's shoes and other items.

Further, the State petitioned the circuit court to restore the complaint, the warrant and the return of warrant, pursuant to the Court Records Restoration Act (705 ILCS 85/1 
et seq.
 (West 1992)). The State again insisted that all three documents had once been filed with the court, but were now lost.

 The circuit court granted defendant's motion to suppress on April 18, 1994. The court's written order stated in part that while a defendant bears the initial burden to show the illegality of a search, that burden shifts to the State if the defendant establishes a defect in the warrant or that the search exceeded the warrant. In this case, the State maintained that the police seized defendant's shoes, a hand towel and a handkerchief, allegedly pursuant to a validly executed search warrant. However, the State failed to produce the warrant, contending that it had been lost or destroyed. In the absence of a search warrant, the circuit court could not determine whether the State fulfilled its burden to withstand defendant's challenge to the warrant. Additionally, the court ruled that the search of defendant's home did not fall within any recognized exception to the warrant requirement. According to the circuit court, any search conducted without a warrant was illegal and all items seized would be suppressed.

The circuit court also found that, even if Judge Gwilliam had issued a search warrant pursuant to the complaint tendered by the State, “the State would still have problems with the legality of the warrant,” because the complaint was neither signed nor sworn to by the judge or the officer seeking the search warrant.

Lastly, the circuit court denied the State's petition to restore the purported search warrant. In order to preserve the integrity of the “warrant requirement,” the court found, a warrant cannot be restored in the same manner as other documents and records. Such a procedure would “undermine the integrity and reasoning of the Fourth Amendment's requirement of a warrant,” the circuit court reasoned.

The State appealed the circuit court's April 18, 1994, order granting the motion to suppress and denying the petition to restore the warrant. On June 30, 1995, the appellate court reversed and remanded for further proceedings. 
People v. Wells
, 273 Ill. App. 3d 349, 353 (1995) (
Wells I)
. The appellate court ruled that the lower court violated section 114–12(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114–12(b) (West 1992)) by failing to receive evidence offered by the State on the question of the existence of a search warrant. 
Wells I
, 273 Ill. App. 3d at 352. The appellate court also stated that defendant bears the burden of proving that the search and seizure were unlawful. 
Wells I
, 273 Ill. App. 3d at 351, citing 725 ILCS 5/114–12(b) (West 1992).

Proceeding under the assumption that a search warrant had in fact been issued in 1967, the appellate court ordered that, on remand, the circuit court determine whether Judge Gwilliam possessed probable cause to issue the warrant, or whether the items seized in 1967 fell within an exception to the warrant requirement. 
Wells I
, 273 Ill. App. 3d at 352.

At the appellate court's direction, the circuit court conducted a hearing on January 27, 1994. Before the hearing began, the circuit court obtained the oral affirmance of counsel for the State and for defendant that, contrary to the finding of the appellate court, the parties had never reached any agreement concerning the existence of a search warrant.

The circuit court then received evidence regarding the purported issuance of a search warrant in 1967, and the events surrounding the seizure of items from defendant's home. Personnel employed by the circuit court of Madison County and the Alton police department averred that no one could locate an original complaint for a search warrant, a search warrant or return of warrant in court or police files. An unsigned carbon copy of a complaint was located in the police files, as was a “consent” form, dated July 31, 1967, and signed by defendant. The consent form stated that defendant consented to “give up my shirt, pants, shoes that I wore on Saturday evening *** to be examined.” James Velloff, from the Alton police department, testified that the handkerchief and towel seized from defendant's home on August 4, 1967, were missing; only the shoes taken from that address could be found.

John Light testified last, and stated substantially as follows. In 1967, he was employed as a detective in the Alton police department. He interviewed defendant on July 31, 1967, at defendant's home. Light “advised” defendant he wanted the clothes defendant wore on the night of Hale's murder. Defendant gave Light a long-sleeved, plaid shirt, a pair of pants and cloth slippers. Defendant signed a “receipt” for those clothes. Light could not remember if he went into defendant's home when defendant retrieved the clothing.

Light said that during the course of his investigation, he learned from Hale's family that Hale owned a .25-caliber Beretta handgun, and that Hale usually kept the gun in the glove compartment of his automobile. The gun was not found in Hale's car after the discovery of his body.

On August 1, 1967, Light's investigation revealed that Hale and defendant were with two prostitutes on the night of the murder. One of the prostitutes told Light that defendant was wearing a short-sleeved, striped shirt when she saw him.

Light testified that he brought a complaint for a search warrant before Judge Gwilliam on the morning of August 4, 1967. The complaint sought a warrant for “articles of clothing, [and] a handgun.” However, on cross-examination, Light was shown defendant's exhibit 3, a copy of an unsigned complaint to search defendant's residence for a .25-caliber Beretta handgun only. Light stated he had no idea who prepared defendant's exhibit 3. Light could not be sure that he signed a complaint for a warrant or that defendant's exhibit 3 was the document he signed in front of Judge Gwilliam. It was possible that he signed another document and that he may not have signed the complaint for warrant in the presence of Judge Gwilliam. Light conceded that defendant's exhibit 3 made no reference to clothing, shoes or rags of any kind. He had no idea what happened to the original complaint, although he believed the judge kept it.

Light testified that when he appeared before Judge Gwilliam on August 4, 1967, Light prepared and presented an affidavit to the judge in support of the request for a search warrant. He talked to the judge about the case and told the judge what he was looking for in defendant's home.

Judge Gwilliam executed a warrant in Light's presence. The warrant permitted a search of defendant's residence for “clothing in general” and a handgun. One of the items of clothing listed on the warrant was a pinstriped, short-sleeved shirt. However, Light could not state what was on the face of the original warrant. He also agreed that the warrant did not permit seizure of the hand towel and handkerchief.

According to Light, he and Corporal Logan of the Alton police department arrived at defendant's residence later on August 4. Defendant was not there. Terry Wells, defendant's son, was at the apartment and invited Light in. He read the warrant to Terry and asked Terry to retrieve the clothes defendant wore the night of Hale's death, and “shoes that he usually wears when he goes out.” Terry went into a bedroom and brought out a pair of black shoes, although Terry said the shoes were brown.

Light stated that he took the shoes, then looked in the bedroom and found a towel and handkerchief with brown stains on them. He kept both. Light looked for a gun but did not find any. He also did not find a short-sleeved shirt matching the description of the one described by the prostitute.

Light averred that he listed the shoes, handkerchief and towel on the back of the warrant and left the warrant with Terry. He filed a return of warrant with the circuit court.

Light identified defendant's exhibit 4 as a police report he prepared in 1967, shortly after the events described in the report, including the August 4 search of defendant's residence. Light's memory of the events detailed in the report was fresh at the time he made it. In the report, Light stated he obtained a search warrant for a gun. The report does not indicate that the search warrant authorized a search for anything else. The report did not list all of the items seized at defendant's home.

By order entered January 5, 1996, the circuit court again granted defendant's motion to suppress and denied the State's petition to restore the warrant. The circuit court enumerated several bases supporting its decision to suppress evidence taken from defendant's home on August 4, 1967. First, the court observed that Light could not identify defendant's exhibit 3 as the complaint filed in support of a search warrant. Without the complaint or the warrant supposedly issued by Judge Gwilliam, the circuit court could not determine whether probable cause existed to justify issuance of a warrant. The court noted that “[s]ince there is no document and no credible evidence that the court can rely on, the court cannot determine if a warrant was ever issued and if the purported warrant was in the proper form commanding (a) a search of (b) a specifically designated area or place (c) to seize (d) particularly described items. In summary, the court cannot determine that a warrant existed or that it would have allowed the search of August 4, 1967.”

Further, the circuit court determined that, even if the State could produce the original complaint or the warrant, the allegations in the complaint would not sustain a finding of probable cause to issue a warrant. The complaint alleged police were looking only for stolen goods (a gun), and not for evidence of a homicide. The shoes, towel and handkerchief could not be considered stolen goods. Moreover, assuming that a warrant in fact issued on August 4, the only item listed in the warrant as the proper object of a search was the handgun. Also, any conversation Light had with Judge Gwilliam on August 4 concerning the scope of the proposed search was “irrelevant” since there was no evidence that the conversation was under oath.

 Finally, the circuit court ruled that Terry did not consent to a search of his father's residence, but rather only complied with a police directive. Thus, the shoes, handkerchief and towel were seized pursuant to a nonconsensual police search.

The State appealed. A divided appellate court reversed and remanded for further proceedings. 
People v. Wells
, 286 Ill. App. 3d 692 (1997) (
Wells II
). The appellate court rejected the circuit court's finding that no search warrant ever existed. 
Wells II
, 286 Ill. App. 3d at 696-97. To the contrary, the appellate court ruled that the State presented “irrefutable evidence of the warrant's procurement, issuance, and execution” (
Wells II
, 286 Ill. App. 3d at 697), and stated, “[t]his was not a warrantless search” (
Wells II
, 286 Ill. App. 3d at 698).

The appellate court concluded that, because it “knew” that a search warrant was “used” in this case, and that its loss was inadvertent, only a showing that the officers executing the warrant acted in bad faith would justify suppressing the fruit of the search. 
Wells II
, 286 Ill. App. 3d at 701-02. The court remanded the cause to the circuit court for further proceedings regarding the good faith of Light and the Alton police department. 
Wells II
, 286 Ill. App. 3d at 705.

The dissent criticized the majority's conclusion that a warrant existed at one time and that probable cause existed to obtain that warrant. 
Wells II
, 286 Ill. App. 3d at 705. The same evidence the majority cited as “irrefutable” proof of a warrant and probable cause was labeled “incredible” by the circuit court. 
Wells II
, 286 Ill. App. 3d at 705. The dissent reasoned that a reviewing court's inquiry should end with a determination of whether any “good cause” existed to reject the circuit court's findings following the evidentiary hearing. 
Wells II
, 286 Ill. App. 3d at 706. “If the fourth amendment requires a warrant, and if we permit restoration of a warrant with incredible evidence, when no physical warrant exists, then I must agree with the trial judge that to reverse this decision `would undermine the integrity and reasoning of the Fourth Amendment.' ” 
Wells II
, 286 Ill. App. 3d at 705-06.

STANDARD OF REVIEW

On appeal from an order granting a motion to suppress, this court will not reverse the circuit court's decision unless it is manifestly erroneous. 
People v. Galvin
, 127 Ill. 2d 153, 162 (1989). Manifestly erroneous means arbitrary, unreasonable and not based on the evidence. 
People v. Rice
, 286 Ill. App. 3d 394, 399 (1996).

ANALYSIS

A. Whether the Circuit Court's Order Granting Defendant's Motion to Suppress Was Manifestly Erroneous

While this appeal presents multiple issues for our consideration, the matter turns primarily on our disposition of whether the circuit court's determination that the police conducted a warrantless search in 1967 was manifestly erroneous. The circuit court grounded its order in a finding that no search warrant ever existed. The appellate court concluded that a search warrant did exist.

We hold that the circuit court was not in error. We find as well that the appellate court failed to accord the circuit court proper deference as the finder of fact in the motion to suppress hearing, and that the appellate court erred in remanding the cause to the circuit court for further evidentiary proceedings.

The circuit court properly recognized that the existence or absence of a warrant in this case would chart the course of the circuit court's analysis in ruling on the motion to suppress. If the lower court determined that a warrant was issued on August 4, 1967, the court would proceed to an inquiry regarding probable cause and the good faith of the executing officers. See 
Wells I
, 273 Ill. App. 3d at 352. If, however, the circuit court ruled that no warrant issued, then the search was presumptively unreasonable and invalid, and the motion to suppress should have been granted, unless the State could prove the applicability of one of the exceptions to the warrant requirement. 
People v. Madison
, 121 Ill. 2d 195, 201 (1988);
 People v. McGee
, 268 Ill. App. 3d 32, 40 (1994). No exception to the warrant requirement has been raised on appeal. Therefore, “[s]ince the only justification tendered in support of this search was the use of a search warrant, the disavowal of its existence would control the outcome and require the result reached [before the circuit court].” 
Wells II
, 286 Ill. App. 3d at 695.

In the case 
sub judice
, the State could not produce an original or copy of a search warrant. The State also failed to file a return of warrant or complaint for the issuance of a warrant. The only “complaint” introduced into evidence was a copy of a complaint, neither signed nor affirmed under oath. Further, Light could not state that the unsigned complaint was the complaint on which Judge Gwilliam relied to issue the purported warrant. Light was similarly unable to recall the objects of the search as listed in the warrant.

Because Judge Gwilliam died in 1990, only Light remained to recount the events leading up to the issuance of the warrant. Light maintained that his investigation of the Hale murder led Light to believe that he would find not only a .25-caliber Beretta at defendant's residence, but a striped shirt and other, unnamed articles of clothing, as well. The complaint never specifically mentioned shoes, nor did it list a handkerchief or hand towel among the items to be seized. Light conceded that the unsigned complaint, which may or may not have been the complaint Light tendered to Judge Gwilliam on August 4, 1967, merely alleged that the police wanted to search defendant's residence for evidence of a robbery, and that they sought only the handgun. The complaint makes no reference to evidence of a homicide or to any articles of clothing. A police report created by Light and produced from the original Alton police records substantiated only Light's determination to look for a handgun. It did not mention articles of clothing, hand towels, or handkerchiefs. Light's handwritten notes, by contrast, stated that a warrant issued, but did not describe the warrant's scope.

 Moreover, although Light testified that he presented an affidavit to Judge Gwilliam and told him “what he was looking for,” no affidavit was found that enumerates the items Light purportedly asked the judge to include in the warrant.

The appellate court read this evidence as irrefutable proof of the warrant's existence. 
Wells II
, 286 Ill. App. 3d at 697. We find that the appellate court reached this conclusion by failing to apply the proper standard of review and by usurping the circuit court's role as finder of fact. In a hearing on a motion to suppress, the circuit court is invested with the responsibility to judge the credibility of witnesses, the weight to be given to their testimony and inferences to be drawn from the evidence. 
Galvin
, 127 Ill. 2d at 163; 
People v. Akis
, 63 Ill. 2d 296, 298 (1976). Whether the reviewing court would reach the same conclusion as the circuit court is irrelevant; the pertinent inquiry is whether the circuit court abused its discretion as finder of fact. 
People v. Campbell
, 146 Ill. 2d 363, 375 (1992); 
People v. Howard
, 121 Ill. App. 3d 938, 946 (1984). Only upon a showing of abuse of the circuit court's discretion will its finding be disturbed. See 
People v. Franklin
, 135 Ill. 2d 78, 96 (1990); 
People v. Nemke
, 46 Ill. 2d 49, 57 (1970); 
Howard
, 121 Ill. App. 3d at 946. We cannot say that the circuit court abused its discretion in concluding that no warrant ever existed. The State never produced a warrant. Only one witness, Light, claimed that Judge Gwilliam issued a warrant on August 4, 1967. Although Light's recollection prompted him to state that the warrant authorized a search for a handgun and clothing, none of the documents introduced at the hearing substantiated Light's memory.

Light's testimony was remarkable as well for the significant gaps it contained. He could not recall whether the unsigned complaint introduced at the hearing formed the basis for the warrant; he could not say what was stated on the face of the warrant; and he could not explain the absence of an affidavit memorializing his conversation with Judge Gwilliam.

Only the trial judge heard Light testify and observed his demeanor during the hearing. It is precisely because of the unique position occupied by a trial judge that reviewing courts trust the lower court to assess the credibility of the witnesses. 
Galvin
, 127 Ill. 2d at 163. Nothing of record suggests the circuit court's finding of incredibility constituted an abuse of discretion. In fact, what few documents still exist are uniform only in their inconsistency concerning details of the alleged warrant.

Focusing specifically on the police report and notes found in the Alton police department files, the appellate court concluded that because they were created contemporaneously with the search they “should not be disregarded.” 
Wells II
, 286 Ill. App. 3d at 698. Read in conjunction with Light's testimony, moreover, the appellate court further maintained that the evidence of the existence of a warrant was “uncontradicted” and not “inherently improbable.” 
Wells II
, 286 Ill. App. 3d at 698 (citing 
Quock T
ing v. United States
, 140 U.S. 417, 420-21, 35 L. Ed. 501, 502, 11 S. Ct. 733, 734-35 (1891) and 
People ex rel. Brown v. Baker
, 88 Ill. 2d 81, 85 (1981)).

Quock Ting
, 140 U.S. 417, 35 L. Ed. 501, 11 S. Ct. 733, in fact supports the outcome urged by the circuit court. There, the United States Supreme Court held that even uncontradicted evidence does not always allow only one inference, particularly where witness testimony is inherently improbable, contains contradictions and omissions, or is incredible. 
Quock Ting
, 140 U.S. at 420-21, 35 L. Ed. at 502, 11 S. Ct. at 734-35.

In 
People ex rel. Brown v. Baker
, 88 Ill. 2d 81 (1981), a paternity action, both the plaintiff and the defendant agreed that they engaged in intimate relations during the period in which the plaintiff's child was conceived. The plaintiff testified she did not have intercourse with anyone other than the defendant in that time frame. A third male, David Dawson, testified in the defendant's case that he was a friend of the plaintiff, but denied ever having intercourse with her. The defendant testified only that he knew Dawson was a friend of the plaintiff.

The jury returned a verdict for the defendant. The appellate court reversed, and held that the trial court erred in refusing the plaintiff's post-trial request for a judgment notwithstanding the verdict. This court affirmed the appellate court, noting that although a jury is generally trusted to judge witness credibility, it cannot “arbitrarily or capriciously reject the testimony of an unimpeached witness.” 
Brown
, 88 Ill. 2d at 85. “Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury.” 
Brown
, 88 Ill. 2d at 85.

The 
Brown
 court found the record devoid of any evidence to discredit the plaintiff's testimony that only the defendant could be the father of her child. The court also found no justification to doubt the plaintiff's credibility. The plaintiff's testimony was “rational, reasonably consistent and certain,” and she was “positive in her denial” that the child could have been fathered by David Dawson. 
Brown
, 88 Ill. 2d at 85-86. Under the circumstances presented in 
Brown
, the evidence overwhelmingly favored a verdict for the plaintiff and no contrary verdict could stand. 
Brown
, 88 Ill. 2d at 86. 

The instant appeal is distinguishable from 
Brown
. Unlike the plaintiff in 
Brown
, Light's testimony contained significant inconsistencies or omissions. Although he stated he was sure he discussed searching for defendant's clothes with Judge Gwilliam, and that the warrant authorized a search for articles of clothing, a police report prepared close to the time of the search contained no reference to clothing. The complaint Light supposedly tendered to Judge Gwilliam similarly referred only to a handgun.

Light's testimony also lacked the certainty of the plaintiff's case in 
Brown
. On cross-examination, Light admitted he was not sure whether the unsigned complaint was the one actually filed before Judge Gwilliam. He could not describe the scope of the search authorized by the warrant or of the affidavit he supposedly swore before the judge. Light's testimony was not so consistent, internally or as compared to other evidence admitted at the hearing, that it could not be questioned by the circuit court.

The circuit court's order suppressing evidence seized on August 4, 1967, was not manifestly erroneous. The court's determination that no warrant issued lay well within its discretion. Accordingly, we reverse the appellate court and affirm the circuit court's order of January 5, 1996.

B. Whether the State Must Produce a Warrant to

Justify a Search

Defendant asks this court to establish a “bright line rule” that “for a search to be justified by a warrant, the State must produce that warrant or a reliable copy of that warrant in hearings before the circuit court.” We decline to write such a rule because it would frustrate an Illinois statute that allows a circuit court to restore court documents under certain circumstances. Additionally, we conclude that, if the original search warrant is lost or destroyed, the prohibition against unlawful searches and seizures will not be undermined by proof that the search warrant existed at one time.

“Courts of record have inherent power to restore or substitute papers, files and records which have been lost or destroyed.” 
In re Estate of Bird
, 410 Ill. 390, 398 (1951). The power is inherent in every court of general jurisdiction. 
In re Estate of Bird
, 410 Ill. at 399, citing 
Blakemore v. Wilson
, 61 Ill. App. 454, 456 (1895). Further, section 2 of the Court Records Restoration Act (Act) (705 ILCS 85/2 (West 1992)) permits a party to seek a declaration from the court as to whether a record existed and if so what the substance of it was. 
In re Estate of Bird
, 410 Ill. at 399, citing
 Blakemore
, 61 Ill. App. at 456. The Act states in pertinent part that:

“[W]henever the loss or destruction of any such record or part thereof shall have happened, or shall hereafter happen, and such defect cannot be supplied, as provided in the next preceding section, any party or person interested therein may make a written application to the court to which such record belonged, verified by affidavit or affidavits, showing the loss or destruction thereof, and that certified copies thereof cannot be obtained by the party or the person making such application, and the substance of the record so lost or destroyed, and that such loss or destruction occurred, without the fault or neglect of the party or person making such application, *** and thereupon, said court shall cause said application to be entered of record in said court, and due notice of said application shall be given, as in civil cases, that said application will be heard by said court. And if, upon such hearing, said court shall be satisfied that the statements contained in said written application are true, said court shall make an order, reciting what was the substance and effect of said lost or destroyed record; which order shall be entered of record in said court, and have the same effect which said original record would have had if the same had not been lost or destroyed, so far as concerns the party or person making such application ***.” 705 ILCS 85/2 (West 1992).

While we know of no Illinois court that has granted a petition to restore a search warrant, the breadth of the Act furnishes the means to seek restoration of a search warrant. The Act allows restoration of “the record of any judgment or order, or other proceeding, of any judicial court of this State, or any part of the record of any judicial proceeding.” 705 ILCS 85/1 (West 1992). Search warrants in Illinois can issue only upon petition to a trial court (725 ILCS 5/108–3 (West 1996)), a type of “judicial proceeding.” Additionally, this court has interpreted the scope of restorable documents broadly. 
In re Estate of Bird
, 410 Ill. at 399 (“It is immaterial whether the lost record was an initial pleading, or an appearance, or an entire record”).

Moreover, adequate safeguards exist within the statute to ensure that the government and its agents may win restoration of a search warrant only after satisfying several explicit evidentiary requirements. The proponent of the warrant must file a written petition supported by affidavit, showing: the loss or destruction of the search warrant; that certified copies of the warrant cannot be obtained; the substance of the warrant; that the loss or destruction occurred without the fault or neglect of the petitioner; and that the loss or destruction of the warrant, unless supplied, will or may result in damage to the party or person filing the petition. 705 ILCS 85/2 (West 1992). The circuit court must then convene a hearing on the petition and “be satisfied” that the statements in the application are true. 705 ILCS 85/2 (West 1992). Critically, a successful petitioner, plaintiff or defendant, would succeed only in restoring a lost or destroyed search warrant. Whether a criminal defendant prevails on a motion to suppress necessitates an entirely separate inquiry.

The proofs prescribed by the statute also differentiate this appeal from several cases called to our attention by defendant. 
Beed v. State
, 271 Ark. 526, 534, 609 S.W.2d 898, 905 (1980); 
Russ v. City of Camden
, 256 Ark. 214, 215, 506 S.W.2d 529, 530 (1974); 
Oliver v. State
, 711 S.W.2d 442, 444 (Tex. Ct. App. 1986); 
Cannady v. State
, 582 S.W.2d 467, 469 (Tex. Crim. App. 1979). In each, the court stated that when defendant moves to suppress evidence seized pursuant to a warrant, the government must produce the warrant. 
Beed
, 271 Ark. at 534, 609 S.W.2d at 905; 
Russ
, 256 Ark. at 215, 506 S.W.2d at 530; 
Oliver
, 711 S.W.2d at 444; 
Cannady
, 582 S.W.2d at 469. However, these cases neither rely on Illinois law nor cite a statute which would permit the trial court to restore a document previously filed with the court. 
Beed
, 271 Ark. at 534-36, 609 S.W.2d at 905; 
Russ
, 256 Ark. at 215, 506 S.W.2d at 530;
 Oliver
, 711 S.W.2d at 444; 
Cannady
, 582 S.W.2d at 469. Indeed, the Supreme Court of Arkansas conceded that the State might prove the existence of a warrant without producing it. 
Russ v. City of Camden
, 256 Ark. at 215, 506 S.W.2d at 530 (“If the State cannot produce either [the warrant or the affidavit in support thereof] then it should follow the approved procedure for establishing the contents thereof”).

The circuit court expressed concern that restoration of a lost search warrant would undermine the integrity of search warrants generally. However, the circuit court failed to explain how the Act compromises search warrants, and we see no reason to preclude proof of a search warrant by means other than production of the warrant itself. While the State failed to prove the existence of a search warrant in this case, we can conceive of instances when a warrant, like any other document made part of a court file, could be innocently lost. This court cannot conclude that the existence of a search warrant could never be proved, in the absence of a warrant itself.

C. Whether 
Laches 
Should Bar Defendant's

Motion to Suppress

The State argues for the first time before this court that defendant's motion to suppress should be dismissed pursuant to the 
laches
 doctrine. The equitable defense of 
laches 
bars claims by those who neglect their rights to the detriment of others. 
Tully v. Illinois
, 143 Ill. 2d 425, 432 (1991). Application of the 
laches
 doctrine requires a showing of lack of due diligence by the party asserting the claim and prejudice to the party asserting the doctrine. 
Tully
, 143 Ill. 2d at 432.

Like 
laches
, the waiver rule serves the salutary effect of prompting parties to timely articulate arguments. See 
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 536 (1996). An argument that could and should have been raised before a lower court, but was not, is waived. 
People v. Hawkins
, 181 Ill. 2d 41, 54 (1998).

The State waived its right to argue 
laches
 by neglecting to assert the doctrine until it reached this court. Even in the absence of waiver, we would refrain applying the 
laches 
doctrine in this case. The murder occurred in 1967. The State never charged defendant with any crime until 1992, although the State identified defendant as a suspect early in the investigation of Hale's death. Patently, defendant had absolutely no need to move to suppress items removed from his home unless and until the State lodged a complaint or indictment against him. We do not detect in the present appeal an instance of a party “sle[eping] on his rights.”
 Tully
, 143 Ill. 2d at 432.

CONCLUSION

The judgment of the appellate court is reversed. We affirm the order of the circuit court granting defendant Norval W. Wells, Jr.'s motion to suppress and denying the petition of the State to restore the alleged search warrant.

Appellate court judgment reversed;

circuit court judgment affirmed.