# Illinois Official Reports

## Appellate Court

---

### *People v. Bowens*, 2017 IL App (4th) 150830

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. D'ARIOUS M. BOWENS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0830 |
| Filed | March 22, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 08-CF-33; the Hon. Robert M. Travers, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Jason B. Jordan, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Patrick Delfino, David J. Robinson, and James C. Majors, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion.<br>Justices Holder White and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, D'Arious M. Bowens, appeals the third-stage denial of his postconviction petition, arguing (1) the trial judge committed reversible error when she allowed her husband to serve on the jury. In the alternative, defendant contends (2) he received ineffective assistance of counsel when his attorney failed to use a peremptory strike against the judge's husband, (3) the $50 court-finance assessment was improperly imposed by the circuit clerk, and (4) he is entitled to *per diem* credit against his $200 domestic-violence assessment. We affirm in part, vacate in part, and remand with directions.

¶ 2                                    I. BACKGROUND

¶ 3        In February 2008, the State charged defendant with (1) attempt (first degree murder) (720 ILCS 5/8-4, 9-1(a)(1) (West 2008)), (2) aggravated domestic battery (720 ILCS 5/12-3.3 (West 2008)), and (3) two counts of aggravated battery (720 ILCS 5/12-4 (West 2008)), alleging defendant repeatedly stabbed his girlfriend, Belinda Butler, intending to kill her. Defendant's strategy throughout the trial was to admit stabbing Butler but deny he intended to kill her.

¶ 4        Following *voir dire* questioning by the trial court and counsel, the court allowed counsel to strike jurors only within each respective panel of four. Defense counsel exercised four peremptory challenges on potential jurors before accepting the first panel. During the selection of the second panel, the following exchange occurred regarding a prospective juror who happened to be the trial judge's husband:

> "[DEFENSE COUNSEL]: Judge, I'm going to make a motion for cause on number 7, Bauknecht. I just, I don't have any legitimate legal basis. I don't know the research on this, but it just seems strange enough.
>
> THE COURT: I don't think I can excuse him for cause. I will let you know for the record that we typically don't discuss much about work with each other, and I have gone to great lengths to not discuss anything about this case knowing that he was on upcoming jury duty.
>
> [DEFENSE COUNSEL]: I make the motion for cause. I don't have an argument on it.
>
> THE COURT: I don't think I can excuse him for cause. I don't have a basis for cause. That's denied.
>
> [DEFENSE COUNSEL]: Okay. Judge, I'm going to pause for a second here, please."

¶ 5        Shortly thereafter, defendant's trial counsel used his fifth peremptory challenge on another potential juror. The defense then accepted that panel, which included juror Bauknecht. When defendant accepted this second panel, he still possessed two unexercised peremptory challenges. Later, the defense exercised those last two peremptory challenges on two other potential jurors during the selection of the final panel. In sum, defendant exercised (1) four of his peremptory challenges before accepting the first panel of four jurors, (2) one peremptory challenge before accepting the second panel of four jurors, which included juror Bauknecht, and (3) two peremptory challenges before accepting the final panel of four jurors.

¶ 6    During defendant's trial, Butler testified she and defendant were preparing dinner at her apartment. After she placed dinner in the oven, the couple sat down in the living room and began watching television. Defendant asked her whether they were going to have sex that night. Butler responded, "No." Defendant then asked her whether she was still attracted to him, but Butler did not respond. At that point, defendant sat up on the edge of the couch, shook his head, and said, "I'm sorry. I've got to do this." Butler asked defendant whether she should be scared, and he responded, "Yes."

¶ 7    Butler reached for her cellular telephone and told defendant she was going to call the police. However, before she could get to her phone, defendant got on top of her and began stabbing her in the chest with a knife. Defendant's initial stabs were to the upper left side of Butler's chest near her heart. Butler threw her arms across her chest to try to block him, but defendant continued stabbing and cut her arms. When Butler turned over and tried to lift herself up with her hands, defendant repeatedly stabbed her in the back. After Butler made it to the couch, defendant began stabbing her again. Defendant stopped stabbing Butler after she rolled off the couch and fell to the floor. At that point, he then threw the knife into the hallway and said, "I've got to get the fuck out of here." Butler testified she saw defendant take her cellular telephone and leave the apartment. Thereafter, Butler dragged herself next door to Gerry Gilmor's apartment. She banged on the door and pleaded, "Gerry, help me. He stabbed me. Please don't let me die."

¶ 8    Gilmor testified she heard (1) pounding on the wall that she shared with Butler and (2) Butler yelling defendant's name. Shortly thereafter, Gilmor heard Butler at her kitchen door, pleading for help. Gilmor rushed outside to find Butler sprawled half on and half off her porch. Gilmor called 911 and tried to stop the bleeding.

¶ 9    Stephanie Law, the 911 dispatcher who took Gilmor's call, testified that while she was on the phone with Gilmor, her fellow dispatcher received a call from defendant, who was distraught and crying. Defendant admitted doing something "really bad" and then threatened to kill himself.

¶ 10    D'Andrea Amaya, defendant's sister, testified defendant came to the house she shared with defendant's mother, banging on the door and crying. Once inside, defendant admitted stabbing Butler. Shortly thereafter, defendant used the bathroom to wash Butler's blood from his arms.

¶ 11    When police arrived at defendant's mother's house, they found defendant standing in the kitchen, crying and repeatedly telling them, "Just kill me. Just shoot me." Upon his arrest, officers discovered defendant's shoes and jeans were stained with blood.

¶ 12    Dr. John Hafner, Butler's emergency room physician, testified Butler appeared to be "critically ill" when she arrived. She was not communicating well and had stab wounds to her torso, arms, armpits, wrists, and back, some of which caused hemorrhages. Those wounds included three stab wounds to the "black box," a term he used to describe the anatomical area of the back and chest surrounding the heart. Hafner testified stab wounds could easily enter the heart through that area. Butler was eventually transported by helicopter to a trauma center for additional medical care.

¶ 13    Thereafter, the jury convicted defendant of attempt (first degree murder), aggravated domestic battery, and two counts of aggravated battery.

¶ 14    In April 2009, the trial court sentenced defendant to 24 years in prison.

¶ 15    Defendant appealed, arguing, *inter alia*, the trial court erred by failing to excuse the trial judge's husband from the jury for cause. This court affirmed. *People v. Bowens*, 407 Ill. App. 3d 1094, 1120, 943 N.E.2d 1249, 1273 (2011) (Pope, J., dissenting), *appeal denied*, No. 112035 (May 25, 2011).

¶ 16    In May 2012, defendant, *pro se*, filed a postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2012)) alleging ineffective assistance of trial counsel because his attorney failed to use a peremptory challenge on juror Bauknecht.

¶ 17    In August 2012, the trial court dismissed defendant's petition, concluding it was frivolous and patently without merit.

¶ 18    In November 2013, we reversed the trial court's first-stage dismissal and remanded the matter for second-stage proceedings before a judge other than the trial judge. *People v. Bowens*, 2013 IL App (4th) 120860, ¶ 17, 1 N.E.3d 638 (Steigmann, J., dissenting).

¶ 19    On remand, defendant's appointed counsel amended the petition to allege (1) defendant's trial counsel was ineffective for failing to use a peremptory strike on juror Bauknecht and (2) that failure (a) denied defendant a fair trial and (b) forfeited his right to raise the issue on direct appeal.

¶ 20    The State did not file a motion to dismiss the amended petition, and the matter proceeded to a third-stage evidentiary hearing.

¶ 21    At the third-stage hearing, defendant's appointed counsel called three witnesses. The first witness was James Casson, an attorney practicing criminal law since 1981. Casson testified if a motion for cause was denied, he would use a peremptory challenge to strike the juror. Casson also testified the decision to use a peremptory strike was a matter of trial strategy and reasonable minds could disagree as to whether to use a peremptory strike on the spouse of a judge. However, he could not imagine a situation where he would not use a peremptory strike under those circumstances.

¶ 22    Brian Gabor, an attorney practicing criminal law for 17 years, testified he never failed to use a peremptory strike after a motion to strike for cause was denied. He also testified a judge's spouse should not serve on the jury because the spouse would be able to read the judge's body language.

¶ 23    Defendant testified that while he was present during *voir dire* questioning, he found out the judge's husband was on the jury after it was impaneled but before the start of the trial. He admitted hearing Judge Bauknecht state her husband was in the jury pool.

¶ 24    For its part, the State called Jason Cannell, defendant's trial counsel, who testified he went into *voir dire* with the general strategy of trying to hold onto peremptory strikes to use against potential jurors who would be unfavorable toward defendant. Specifically, Cannell explained his decision not to use a peremptory strike on juror Bauknecht as follows:

> "[I like to] keep some [peremptory strikes] in the bank. *** [Y]ou never want to get stuck at the end and have somebody that you feel could be a negative juror for your client; and so, usually you want to have some available for that last panel. I would always look at the entire prospective jury pool that had been called for that day. So, I was not looking in terms of just four at a time, but looking at the entire pool as a whole, looking down the line, gauging how many peremptory challenges the State had versus how many I had, who might come down the list that would be a potential problem

based on their answers to the questionnaire; and so, that would be kind of a full effect. And then I think how they respond to questions, you know just some instincts and experience, you know, using all of those factors to strike the potential jurors that may be negative toward your client."

Cannell explained he initially moved to strike the judge's husband for cause because he "felt that it was error for him to sit; that it was improper" and "[e]ven if he could be fair and impartial, it gave the appearance of impropriety." Cannell did not think defendant should bear the burden of correcting the trial judge's error by having to use a peremptory challenge. Cannell testified defendant expressed some concern to him about Bauknecht serving as a juror but could not recall the exact words or nature of the comment. Cannell's concerns about Bauknecht serving were solely as a result of his relationship to the trial judge. Nothing in the way he answered questions led Cannell to believe Bauknecht would be anything but fair and impartial.

¶ 25 Thereafter, the parties presented their respective arguments to the trial court. According to defendant, the presence of the judge's spouse on the jury gave the appearance of impropriety and amounted to a constitutional violation. The State argued (1) the decision not to use a peremptory strike was trial strategy and thus immune from an ineffective assistance claim and (2) defendant could not show prejudice as the evidence against him was overwhelming.

¶ 26 Following the parties' arguments, the trial court denied the petition. Specifically, the trial court found the following:

"[I]n claims of ineffective assistance of counsel, we have a two-prong[ed] approach. First of all, the burden, by a preponderance of evidence, is upon the moving party, in this instance, [defendant]. First, that representation of him fell below an objective standard of reasonableness. *** That is the argument of [defendant]; that is what the testimony offered by his witnesses supports. There's some rough edges on the testimony, but that's the testimony in this particular proceeding. I have addressed those issues in relation to this presumption of prejudice; and I'm not required to decide that, but I've stated my doubts about it.

[What] this case comes down [to] is the last factor discussed by [defendant] and the factor most discussed by [the State]; and, that is, the second prong of *Strickland v. Washington* [(466 U.S. 668 (1984))]; and that is that the substandard representation prejudiced the defendant. There's been no showing of that, none whatsoever. There's been no showing or even a suggestion that the outcome of this case would have been different had Mr. Bauknecht not been a juror in this case. As a matter of fact, there's not one shred of the record to even hang your hat on in relation to that particular argument. It's simply not there.

So, as a result of the analysis and for the reasons stated, I find that [defendant] has failed to show the second prong of *Strickland v. Washington*, that there was substandard representation that prejudiced the defendant in the result of that trial; and for that reason, his petition for postconviction relief is denied."

¶ 27 This appeal followed.

## II. ANALYSIS

On appeal, defendant argues (1) the trial court committed reversible error when it allowed her husband to serve on the jury. In the alternative, defendant contends (2) he received ineffective assistance of counsel when his attorney failed to use a peremptory strike against the judge's husband, (3) the $50 court-finance assessment was improperly imposed by the circuit clerk, and (4) he is entitled to *per diem* credit against his $200 domestic-violence assessment.

The Act provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of a constitutional right. 725 ILCS 5/122-1(a)(1) (West 2012). A postconviction proceeding is not an appeal from the judgment of conviction but a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499, 931 N.E.2d 1198, 1204 (2010). To be entitled to postconviction relief, a defendant must establish a substantial deprivation of a constitutional right in the proceedings that produced the challenged judgment. *People v. Harris*, 206 Ill. 2d 1, 12, 794 N.E.2d 314, 323 (2002).

The Act provides a three-stage process. *People v. Makiel*, 358 Ill. App. 3d 102, 104, 830 N.E.2d 731, 736 (2005). "Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006). Here, defendant's petition advanced to a third-stage evidentiary hearing on his claims. We will reverse the decision of the trial court following a third-stage evidentiary hearing only if the decision is manifestly erroneous. *People v. Coleman*, 183 Ill. 2d 366, 384-85, 701 N.E.2d 1063, 1073 (1998). " 'Manifestly erroneous means arbitrary, unreasonable and not based on the evidence.' " *People v. Ballard*, 206 Ill. 2d 151, 162, 794 N.E.2d 788, 798 (2002) (quoting *People v. Wells*, 182 Ill. 2d 471, 481, 696 N.E.2d 303, 308 (1998)).

### A. Due-Process Claim

Defendant primarily argues the trial judge "committed reversible error when she allowed her husband to serve on the jury and thus denied [defendant] his constitutional right to due process, a fair trial, and an impartial jury." Specifically, defendant contends the presence of the judge's spouse on the jury constituted *per se* reversible error.

However, defendant previously argued on direct appeal he was denied a fair trial because the trial judge failed to exclude her husband from the jury for cause. See *Bowens*, 407 Ill. App. 3d at 1095, 943 N.E.2d at 1253. We found the issue waived where the decision not to peremptorily remove juror Bauknecht was an affirmative acquiescence to his jury service. *Bowens*, 407 Ill. App. 3d at 1099-1100, 943 N.E.2d at 1257. We declined to apply a plain-error analysis because the matter involved defendant's affirmative acquiescence to Bauknecht's service and not a procedural default of the issue. *Bowens*, 407 Ill. App. 3d at 1101, 943 N.E.2d at 1258. We further found, "even if defendant had not affirmatively acquiesced to juror Bauknecht's service, that service—if error at all—would not have been structural error on the facts of this case." *Bowens*, 407 Ill. App. 3d at 1101, 943 N.E.2d at 1258. Thus, because we have already considered and rejected defendant's argument, he may not argue it again as the law-of-the-case doctrine precludes relitigation of an issue already decided in the same case. See *People v. Patterson*, 154 Ill. 2d 414, 468, 610 N.E.2d 16, 41 (1992); *People v. McNair*, 138 Ill. App. 3d 920, 922, 486 N.E.2d 941, 943 (1985) ("a determination of an issue on its merits by an appellate court is final and conclusive upon the parties in a second appeal in the same case,

and the issues considered and decided cannot be reconsidered by the same court except on a petition for rehearing").

¶ 35    Defendant's argument is also precluded by the doctrine of *res judicata*, which operates to bar postconviction claims previously adjudicated on direct appeal. *People v. Ligon*, 239 Ill. 2d 94, 103, 940 N.E.2d 1067, 1073 (2010). Indeed, the purpose of a postconviction proceeding is to permit an inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal. *Harris*, 206 Ill. 2d at 12, 794 N.E.2d at 323. On direct appeal, we found "defendant's only challenge may be presented as a claim for ineffective assistance of counsel on collateral attack." *Bowens*, 407 Ill. App. 3d at 1101, 943 N.E.2d at 1258. While defendant did not raise the issue of his trial counsel's ineffective assistance on direct appeal, he did so in his postconviction petition, and we address his argument below. However, the issue of whether the trial court erred in allowing her husband to remain on the jury was raised and disposed of on direct appeal. As such, its relitigation in this appeal is barred.

¶ 36                              B. Ineffective-Assistance Claim

¶ 37    In the alternative, defendant argues he received ineffective assistance of counsel when his attorney failed to use a peremptory strike against the trial judge's husband. Defendant contends that failure deprived him of his fundamental right to a fair trial in front of an unbiased jury. Defendant maintains (1) defense counsel's failure to use a peremptory challenge amounted to deficient performance and (2) "prejudice must be presumed because the presence of the judge's husband on the jury resulted in an unreliable vehicle for determining [defendant's] guilt."

¶ 38    To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland*. Specifically, "a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476, 795 N.E.2d 231, 238 (2003).

¶ 39    The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. See *People v. Brown*, 236 Ill. 2d 175, 185, 923 N.E.2d 748, 754 (2010). In fact, "if an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient." *Graham*, 206 Ill. 2d at 476, 795 N.E.2d at 238; *People v. Hale*, 2013 IL 113140, ¶ 17, 996 N.E.2d 607 (a court may dispose of a *Strickland* claim by proceeding directly to the prejudice prong without addressing counsel's performance).

¶ 40    In this case, to show prejudice defendant would have to demonstrate, but for the judge's husband's presence on the jury, he would not have been convicted of attempted murder. However, due to the overwhelming and undisputed evidence against defendant in this case, he cannot do so. Defendant's strategy throughout the trial was to admit stabbing Butler but deny he intended to kill her. However, such intent to kill could reasonably have been inferred by the jury from the number of stab wounds defendant made with a knife to the "black box" area, *i.e.*, the critical area near Butler's heart. Defendant stabbed Butler 23 times. Further, Dr. Hafner testified Butler arrived in the emergency room with significant blood loss, a faint pulse, and was "struggling to breathe." Hafner testified Butler's condition was critical and she was "in

trouble." Moreover, Butler herself testified to the manner in which defendant repeatedly stabbed her in the chest and back before taking away her cell phone and leaving her alone on the floor. The jury was entitled to infer defendant took Butler's phone to prevent her from calling for help.

¶ 41 Because of the overwhelming amount of evidence against defendant, we cannot say a reasonable probability exists Bauknecht's absence from the jury would have resulted in an acquittal. Thus, defendant is unable to show prejudice. Accordingly, the trial court's judgment denying defendant's postconviction petition was not manifestly erroneous. We note our opinion should not be taken to indicate we approve of this practice, and we emphasize trial judges should not allow relatives to serve on a jury over which they preside.

¶ 42                                    C. Court-Finance Assessment

¶ 43 Defendant argues the $50 court-finance assessment was improperly imposed by the circuit clerk and should be vacated. The State concedes the issue but requests we remand the matter for the trial court to impose the assessment. Defendant maintains the assessment should be vacated without remand. We accept the State's concession but agree with defendant's position regarding remandment.

¶ 44 "Although circuit clerks can have statutory authority to impose a fee, they lack authority to impose a fine, because the imposition of a fine is exclusively a judicial act." (Emphases omitted.) *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18, 18 N.E.3d 912. Thus, "any fines imposed by the circuit clerk are void from their inception." *People v. Larue*, 2014 IL App (4th) 120595, ¶ 56, 10 N.E.3d 959. We note fines imposed by a circuit clerk are still void despite the supreme court's recent abolishment of the void sentence rule in *People v. Castleberry*, 2015 IL 116916, 43 N.E.3d 932. See *People v. Hible*, 2016 IL App (4th) 131096, ¶¶ 10-11, 53 N.E.3d 319. A void judgment can be challenged at any time. *Hible*, 2016 IL App (4th) 131096, ¶ 13, 53 N.E.3d 319. Thus, we have jurisdiction to address this issue for the first time in this appeal.

¶ 45 This court has previously found the $50 court-finance assessment is a fine. *Smith*, 2014 IL App (4th) 121118, ¶ 54, 18 N.E.3d 912. As such, that assessment was improperly imposed by the circuit clerk. However, we decline the State's request to remand the case to the trial court for its reimposition as *Castleberry* "prevents a remand for the imposition of *** statutorily mandated fines because that act would result in an impermissible increase in the defendant's sentence on appeal." *People v. Daily*, 2016 IL App (4th) 150588, ¶ 29 (citing *People v. Wade*, 2016 IL App (3d) 150417, ¶ 13, 64 N.E.3d 703); see *Castleberry*, 2015 IL 116916, ¶ 25, 43 N.E.3d 932. Thus, we vacate the court-finance assessment outright.

¶ 46                                    D. *Per Diem* Credit

¶ 47 Finally, defendant argues he is entitled to *per diem* credit against the $200 domestic-violence fine imposed by the trial court. The State concedes the issue, and we agree.

¶ 48 Section 110-14(a) of the Code of Criminal Procedure of 1963 (Procedure Code) provides, "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110-14(a) (West 2008). We note a claim for monetary credit under section 110-14 of the Procedure Code may be raised at any

time, even on appeal in a postconviction proceeding. *People v. Caballero*, 228 Ill. 2d 79, 88, 885 N.E.2d 1044, 1049 (2008).

¶ 49    Here, defendant was awarded 430 days' credit for time spent in pretrial custody. The $200 domestic-violence fine is eligible for presentence credit. See 730 ILCS 5/5-9-1.5 (West 2008). As such, defendant is entitled to apply his *per diem* credit toward it. We therefore remand the matter with directions to the clerk of the circuit court to correct the fines, fees, and costs order to reflect this 430 days' credit.

¶ 50                                         III. CONCLUSION

¶ 51    For the reasons stated, we (1) affirm the trial court's judgment as to defendant's postconviction petition, (2) vacate the court-finance assessment, and (3) remand for the application of defendant's *per diem* credit toward his domestic-violence assessment and the issuance of an amended fines, fees, and costs order so reflecting. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 52    Affirmed in part and vacated in part; cause remanded with directions.