# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Griffin*, 2013 IL App (2d) 110631

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN E. GRIFFIN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0631 |
| Filed | August 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's erroneous order in 2009 giving effect to the dismissal of defendant's postconviction petition including a claim of his actual innocence was reversed, partially in view of the lack of diligence on the part of both parties, and the cause was remanded and the State was allowed to file an answer to defendant's third amended petition and for further appropriate and timely proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 92-CF-239; the Hon. Timothy Q. Sheldon and the Hon. James T. Doyle, Judges, presiding. |
| Judgment | Reversed and remanded for further proceedings. |

| Counsel on Appeal | Thomas A. Lilien and Mark G. Levine, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Stephen E. Griffin, appeals from the trial court's order dismissing his *pro se* petition for postconviction relief. We reverse and remand for further proceedings.

¶ 2                    I. BACKGROUND

¶ 3    Defendant was charged with one count of first-degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1) (now 720 ILCS 5/9-1(a)(1) (West 2012))) in the shooting death of Michael Brown, who was found unresponsive and bleeding from the head on the side of Kautz Road at 9:55 p.m. on February 5, 1992. At a jury trial, Judge James T. Doyle presiding, only one witness testified that he saw Brown get shot. Anthony Gibson testified that he, along with Brown and codefendant Perez Funches, were in a car driven by defendant.[1] Defendant ordered Brown out of the car, and defendant and Funches walked to the back of the car, while Gibson remained inside. Gibson heard four or five gunshots and saw defendant standing behind Funches as Funches fired a gun straight down from a kneeling position. Defendant testified that he had been out with Funches, Brown, Neal, and Gibson on the night of February 5 but went to his mother's house at around 9:30 p.m. He then borrowed his cousin's car and drove to the house of Paula Thomas; he arrived there at about 10 p.m. and spent the night there. He met with Funches and Gibson the following night and helped them dispose of the gun that Funches told him had been used to kill Brown. Defendant denied being present when Brown was killed.

¶ 4    The jury found defendant guilty, and the trial court sentenced him to a term of 60 years in prison. This court affirmed both the conviction and the sentence in *People v. Griffin*, No. 2-95-1249 (1997) (unpublished order under Supreme Court Rule 23), and our supreme court

_____

[1]Another man, Tommy "Momo" Neal, had previously been ordered out of the car.

denied leave to appeal (*People v. Griffin*, 176 Ill. 2d 582 (1998) (table)).

¶ 5        Defendant then filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 1998)). Defendant's proof of service was dated August 25, 1998. Although the petition was file-stamped October 1, 1998, the record contains a trial court order, dated and file-stamped September 16, 1998, continuing the case until October 1 for status on the petition. In his petition, defendant alleged: (1) that the State suborned perjury by Gibson and Neal in their trial testimony, especially regarding what they received in return for their testimony; (2) ineffective assistance of counsel for (a) failure to offer in evidence telephone records to impeach Gibson and (b) failure to poll the jury and to tell the court that two jurors later told counsel that they did not believe that defendant was guilty but the jury room was too cold and they did not want to stay overnight because of an upcoming holiday weekend; and (3) that the State withheld exculpatory evidence. Defendant attached a February 17, 1992, unsworn handwritten "voluntary statement" from Funches, who had not testified at defendant's trial, in which Funches stated that he would testify that defendant was not present at Brown's killing, had no knowledge of it, and was not involved in the planning or ordering of it. Defendant also filed a motion for an evidentiary hearing and appointment of counsel; while defendant dated the motion August 25, 1998, it was file-stamped October 1, 1998. In a written order dated by hand September 17, 1998, and file-stamped October 1, 1998, Judge Doyle found the petition to be "without merit and patently frivolous" and dismissed the petition.

¶ 6        On March 12, 1999, defendant filed a "first amended" petition for postconviction relief. Defendant made the same allegations he made in his original petition but attached affidavits of his sister and mother regarding: (1) conversations that they had with defendant's trial attorney about the two jurors who did not believe that defendant was guilty; and (2) a conversation with Gibson in which Gibson stated that defendant had nothing to do with the murder and that the State had paid both himself and Neal for their trial testimony. None of the attachments to his 1998 petition were attached to the first amended petition. Another copy of the first amended petition was file-stamped April 14, 1999, but did not include the affidavit of defendant's sister.

¶ 7        On July 9, 1999, defendant filed a second amended petition for postconviction relief, noting his prior allegations and raising "newly discovered evidence" in the form of an attached affidavit of Gibson in which Gibson stated that he committed perjury during defendant's trial, giving false testimony because he had been arrested and was attempting to exonerate himself by saying whatever the State wanted him to say. According to Gibson, defendant "was not present" when Brown was shot. The trial court appointed the public defender and set the matter for July 23, 1999.

¶ 8        A series of continuances ensued for almost two years until, on April 19, 2001, defendant filed a motion for DNA testing of shoes that defendant had allegedly worn on the night of the murder and thrown out of a car along Interstate 88. The shoes had been recovered and used as evidence at defendant's trial. The trial court granted the motion on June 21, 2001. On November 1, 2001, the trial court ordered the circuit clerk to return the shoes to the State's Attorney's office for testing "as previously ordered by this court." In a handwritten

-3-

note file-stamped December 27, 2001, an assistant State's Attorney stated that she had received defendant's shoes per the November 1 order. On February 28, 2002, the trial court ordered the "Kane County Clerk's office" to "retrieve the shoes" and turn them over to the Aurora police department; in May 2002, the court ordered additional trial exhibits, the victim's jacket and shirt, to be turned over to the Aurora police department for further lab testing. On October 16, 2002, the trial court continued the case and filed an additional order, which stated:

> "State Crime Lab is to test the articles provided in this case to determine whether any DNA material is present. Until the Court receives confirmation of the presence of DNA material, it cannot issue a search warrant(s) for the production of standards from other parties."

¶ 9        Another series of continuances ensued. On April 20, 2005, 2½ years later, the trial court ordered the Illinois State Police crime lab to turn over the shoes, which had been given to the lab by the Aurora police department, to the Kane County public defender's office, which was granted leave to use an independent laboratory for forensic analysis of the shoes. In June 2005, the trial court, Judge Timothy Q. Sheldon now presiding, ordered both the Aurora police department and the circuit clerk's office to allow defense counsel to view any physical evidence from the case that they had in their possession. More continuances ensued; on September 29, 2005, the trial court ordered the evidence to be taken to the State Police crime lab for an examination of the "shoe" for the presence of DNA material and a Combined DNA Index System search.

¶ 10       On November 8, 2005, Judge Sheldon found that: (1) "the last and pending petition" was defendant's second amended petition filed *pro se* on July 2, 1999; (2) defense counsel had not filed an amended petition; (3) the State Police crime lab was ordered on October 16, 2002, to conduct the DNA testing; and (4) no court orders had been entered since September 29, 2005. The case was continued for 10 days for status on the DNA testing.

¶ 11       On January 27, 2006, the trial court ordered Adult Court Services to obtain a buccal swab DNA collection from defendant that day and to turn the kit over to the Aurora police department for entry into evidence. The test kit was to then be transported to the State Police crime lab for evidentiary comparison. The State's Attorney's office filed a supplemental answer to discovery on March 7, attaching a copy of a two-page report from the State Police crime lab dated February 21; however, the answer noted that "[i]t appears from reading the report that the DNA analysis on the items referred to had not been completed as of February 21, 2006."

¶ 12       More continuances ensued, some for status on DNA testing results, others for status on the filing of an amended postconviction petition. On November 16, 2006, the trial court ordered the circuit clerk to produce the entire court file for defense counsel the following day "so that petition and certificate may be completed." However, nothing other than continuances occurred until January 3, 2008, when the trial court ordered that defendant's amended petition for postconviction relief "must be on file by 2-15-08 or it will be barred."

¶ 13       Defendant's third amended petition was filed on February 15, 2008, raising: (1) Gibson's perjured testimony and his affidavit in which he admitted his perjury and that defendant was

not present at the murder; (2) the results of the DNA testing, which had concluded, according to the attached report, that defendant "can be excluded as having contributed to" the mixture of at least three DNA profiles found; (3) the improper verdict of guilt based on the temperature of the jury room and the upcoming holiday weekend; (4) ineffective assistance of counsel for counsel's failure to impeach Gibson regarding his drug usage, to poll the jury, and to raise the allegations that jurors voted guilty for improper reasons; and (5) the affidavits of his mother and sister regarding these issues. Defendant sought a new trial or, in the alternative, a new sentencing hearing.

¶ 14    The continuances began again. Defense counsel filed her certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) on June 18, 2008; on that same date, the trial court ordered the State to file its response to the third amended petition by the next court date, July 23. However, it was not until December 5, 2008, that the State filed a motion to dismiss the third amended petition, arguing that Judge Doyle had entered a final and appealable order dismissing defendant's initial postconviction petition on October 1, 1998, and that defendant was time-barred from filing a motion to reconsider that order or appealing it. In addition, the State argued that defendant could not amend a petition that had been dismissed; therefore, the trial court should consider all of defendant's amended petitions as "newly filed" petitions that defendant did not receive leave of court to file. Further, any petition would have to have been filed by September 26, 1998, pursuant to section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West Supp. 2003)). Although a hearing on the motion to dismiss was scheduled for February 11, 2009, it was only after multiple continuances (including several for defendant to file a written response) that a hearing on the motion to dismiss was held, on October 7, 2009. After the hearing, the trial court found that Judge Doyle had entered an order dismissing defendant's postconviction petition in 1998. The court stated that it would "presume" that notice of the dismissal "was not given in '98." However, the court stated that it would "give effect to that order" and that defendant "is given notice in court of the order from 1998." According to the court, "Defendant may appeal the '98 order w/in 30 days of today's date."

¶ 15    While the court's order contained a written date of October 8, 2009, it was file-stamped October 7. On November 9, 2009, defendant filed a motion to reconsider the dismissal, which defendant later amended on June 24, 2011. The trial court denied the motion to reconsider on July 5, 2011, and defendant filed his notice of appeal that day.


¶ 16                                    II. ANALYSIS

¶ 17    Defendant first contends that the trial court in 2009 did not have authority to "give effect" to the 1998 summary dismissal. The trial court had disregarded that dismissal for a decade, and defendant had not been able to timely appeal it because he had not received notice of it. Defendant seeks remandment of the cause for a hearing on his third amended petition.

¶ 18    Section 122-2.1(a)(2) of the Act requires that, when a trial court dismisses an incarcerated petitioner's petition as frivolous or patently without merit, the court shall do so in a written order, specifying the court's findings of fact and conclusions of law, and shall serve the order on the petitioner "by certified mail within 10 days of its entry." 725 ILCS

5/122-2.1(a)(2) (West 1998).[2] In addition, Rule 651(b) provides, "Upon the entry of a judgment adverse to a petitioner in a post-conviction proceeding, the clerk of the trial court shall at once mail or deliver to the petitioner a notice" with a copy of the court's order attached and informing the petitioner of his right to appeal.

¶ 19    Defendant asserts, correctly, that the record does not indicate that he was notified of the 1998 dismissal of his petition. The State agrees that "there is nothing in the record to establish the defendant was sent the order by certified mail within 10 days of its entry." Further, in its 2009 order, the trial court presumed that notice was not given in 1998. The parties disagree, however, on the effect of this lack of notice on defendant's subsequent "amended" petitions.

¶ 20    Defendant argues that his initial petition was "not effectively dismissed," because he did not receive notice of the dismissal; as the time for a summary dismissal under the Act is within 90 days of filing (see 725 ILCS 5/122-2.1(a)(2) (West 1998)), the trial court could not "give effect" to the summary dismissal 11 years later. In any event, the trial court granted leave to file the amended petition as a successive petition when it appointed counsel and ordered counsel to amend it. The State argues that the trial court provided defendant with "an equitable remedy" and "the opportunity to challenge the dismissal on the merits" by giving effect to the 1998 order. In addition, the State argues that defendant was never given leave to file successive petitions and that, in any case, defendant's successive petitions were not timely filed under section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 1998)). Whether we review the trial court's action as "giving effect" to the first-stage summary dismissal of defendant's initial petition or as a second-stage dismissal of defendant's third amended petition, our standard of review is the same: *de novo*. See *People v. Hodges*, 234 Ill. 2d 1, 9 (2009) (summary dismissal); *People v. Starks*, 2012 IL App (2d) 110324, ¶ 32 (second-stage dismissal).

¶ 21    The trial court's written order dismissing the original *pro se* petition is hand-dated September 17, 1998, and file-stamped October 1, 1998. There is no contention that this order of dismissal was not entered within 90 days of its filing. Instead, defendant argues that the petition was not "effectively dismissed," because he did not receive notice of the dismissal. However, the clerk's failure to perform a ministerial duty does not affect the validity of the trial court's performance of its judicial duty. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 16 (1992); *People v. Ross*, 339 Ill. App. 3d 580, 583 (2003). The trial court's 1998 dismissal of defendant's petition was not emasculated by the clerk's failure to mail a copy to defendant, and there was no need, or authority, for the trial court to "give effect" to that order 11 years later.

¶ 22    However, the failure to give proper notice of a summary dismissal does affect the petitioner's appeal rights. See *People v. Robinson*, 217 Ill. 2d 43, 60 (2005) (Notice was served 12 days after entry of dismissal: "As noted above, there is no dispute the clerk had a

_____

[2]We note that the trial court's order contained no findings of fact or conclusions of law; after listing the items that it had considered, the court merely stated that it found the petition "without merit and patently frivolous."

statutory duty to serve petitioner on time. Therefore, petitioner had a right to timely service. In this case, however, petitioner requires no remedy because he was not prejudiced by the clerk's error. He filed his notice of appeal on time."); *People v. Fikara*, 345 Ill. App. 3d 144, 158 (2003) (supplemental opinion upon denial of rehearing) ("In instances where the requirements of Rule 651(b) have not been satisfied, the reviewing court must treat a defendant's untimely notice of appeal as a petition for leave to file a late notice of appeal within the contemplation of Supreme Court Rule 606(c) ***. [Citation.] The reviewing court must then grant the petition and consider the merits raised in the defendant's appeal."). The trial court in the case before us appears to have likewise considered the lack of notice in the same vein. The trial court decided that it would "give effect" to the 1998 dismissal order, giving defendant notice of that order and ruling that defendant "may appeal the order" within 30 days.

¶ 23    However Solomonic this may appear, figuratively cutting the baby in half by allowing defendant to appeal the 1998 order casts into oblivion everything that occurred in the 11 years after the entry of that order. Defendant filed three "amended" petitions, raising additional claims of actual innocence supported by affidavits, including a recantation and admission of perjury by the only State witness who placed defendant at the scene of the murder. The trial court appointed counsel to amend defendant's second amended petition. Defendant sought, the State did not contest, and the trial court ordered DNA testing of the shoes, which eventually excluded defendant as having contributed to the mixture of DNA profiles found, thereby removing another piece of evidence that supposedly tied defendant to the murder. Attempting "to put the defendant in a position he would have been in" had he received the 1998 order, as the State characterized the trial court's 2009 decision, would mean that the recantation, the affidavits, and the DNA testing, all of which inured to defendant's favor, would be disregarded, as would be the fact that defendant sat in prison for more than a decade while the proceedings dragged on. The State also characterized the trial court's decision as "a fair and equitable resolution given the circumstances concerning the long procedural history of this case"; this is analogous to the Orwellian attitude and practice of expungement of the existence of the "unperson," given "the long procedural history of this case."

¶ 24    In general, the Act contemplates the filing of only one postconviction petition. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). The Act explicitly provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 1998). However, this statutory bar to successive petitions will be relaxed in instances where fundamental fairness so requires. *Ortiz*, 235 Ill. 2d at 329. Such instances include those where relaxation of the bar is necessary to prevent a fundamental miscarriage of justice, as in a claim of actual innocence. *Id.*

¶ 25    The State acknowledges that, as defendant here raised a claim of actual innocence and was not given timely notice of the summary dismissal of his postconviction petition, "fundamental fairness" requires the relaxation of the bar. However, while submitting that "the successive [third amended] petition existed for consideration at the proceeding on the People's motion to dismiss," the State also maintains that "defendant's successive petition was filed outside of the time limitation set by the 1999 Act." Thus, according to the State's

logic, fundamental fairness would allow defendant to avoid the statutory limit of one postconviction petition but not to avoid the statutory time limit for filing a petition. We note, however, that the State has not maintained consistent arguments before the trial court and this court regarding which version of the Act, and its concomitant time limitation, is applicable. Ultimately, the State's timeliness arguments fail.

¶ 26 On appeal, the State asserts correctly that the applicable statute of limitations for a postconviction petition is the one in effect at the time the petition is filed. See *People v. Harris*, 224 Ill. 2d 115, 125 n.1 (2007). The State then posits that, since defendant filed his *pro se* "successive petitions" in 1999, the "1999 Act was the version in effect at the time the defendant's petition was filed." Thus, according to the State, the limitations period contained in section 122-1(c) of the Act results in a deadline of August 4, 1998, for defendant to have timely filed a petition. As defendant's *pro se* "amended petition" was filed on March 12, 1999, the State asserts that it was untimely and should have been dismissed.

¶ 27 However, in reviewing the State's motion to dismiss, we note that the State argued and relied on filing-limitation language that was added to section 122-1(c) in 2003 by Public Act 93-605, § 15 (eff. Nov. 19, 2003). Under that version, according to the State, the deadline for a timely filed postconviction petition was September 26, 1998.

¶ 28 It is not the differing deadlines for the timely filing of a petition that are of importance here. Under either of the State's provided calculations, defendant's filing would be untimely. Rather, we find of interest the State's equivocation as to the applicable version of the Act. In addition to amending the section 122-1(c) time limitation, Public Act 93-605, section 15, further amended section 122-1(c) to provide that the time limitation "does not apply to a petition advancing a claim of actual innocence." See 725 ILCS 5/122-1(c) (West Supp. 2003). In 2008, the State argued to the trial court that the time limitation contained in the 2003 version of the Act applied; it cannot now argue to this court that the exemption to that limitation, which was, in fact, added to the Act by the very same amendment, does not apply. See *People v. Franklin*, 115 Ill. 2d 328, 336 (1987).

¶ 29 We also note that, in its motion to dismiss, the State posited that, since defendant's initial postconviction petition had been dismissed, the trial court "should treat defendant's first, second, and third [amended] petitions as *newly filed petitions*." (Emphasis added.) Defendant's third amended petition, which was the subject of the State's motion to dismiss, was filed on February 15, 2008; "[t]he applicable statute of limitations *** in effect at the time the petition [was] filed" (*Harris*, 224 Ill. 2d at 125 n.1) exempted petitions advancing claims of actual innocence. See 725 ILCS 5/122-1(c) (West 2008). Again, the State's position below belies its arguments here that the 1999 version of the Act applies and that the exemption for claims of actual innocence does not apply.

¶ 30 Our supreme court has also held that time is not an inherent element of the right to bring a postconviction petition; thus, time limitations in the Act are to be considered as an affirmative defense that can be raised, waived, or forfeited by the State. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002). As the State argued below the applicability of the 2003 amendment to the Act, we conclude that it has forfeited any argument that the 1999 time limitation applies. Further, the equitable doctrine of *laches* bars claims by those who neglect

their rights to the detriment of others. *People v. Wells*, 182 Ill. 2d 471, 490 (1998). The application of this doctrine requires a showing of a lack of due diligence by the party asserting a claim and prejudice to the party asserting the doctrine. *Id.* Although defendant did not raise the *laches* doctrine, the State failed to make any mention of defendant's allegedly untimely filing during a decade of proceedings in the trial court and defendant's continued incarceration. We find that, under these circumstances, the State has forfeited, and is further prevented by the doctrine of *laches* from raising, an affirmative defense regarding the timeliness of defendant's postconviction filings.

¶ 31    Contrary to the trial court's 2011 observation that, in light of defendant's 60-year sentence, "[w]e got plenty of time to work on this," too much time has already been expended. For whatever reason, defendant filed a *pro se* "amended" postconviction petition five months after the trial court dismissed the original petition. For whatever reason, the trial court allowed defendant to file two *pro se* amended petitions, appointed counsel, ordered DNA testing, and ordered counsel to file a third amended petition. For whatever reason, the State actively participated in those proceedings for almost a decade before it objected to timeliness and jurisdiction. And for whatever reason, it took another 10 months to deal with the State's motion to dismiss and another 20 months to deal with defendant's motion to reconsider. As the trial court said in denying the motion to reconsider, "No one acted with diligence on this file." However, "diligence" cannot be defined as disregarding all the proceedings in this case since 1998.

¶ 32    We find, as a matter of law, that the trial court's order of October 2009 giving effect to the 1998 dismissal was erroneous and must be reversed. We also conclude that, since the applicable version of the Act provides that the time limitation contained in section 122-1(c) "does not apply to a petition advancing a claim of actual innocence" (725 ILCS 5/122-1(c) (West 2008)), the State's motion to dismiss had no merit and should have been denied by the trial court. Where a motion to dismiss is denied, the next step is the State's filing of an answer to the petition within 20 days. See 725 ILCS 5/122-5 (West 2008). Thus, we remand this case to the trial court for the State to expeditiously and timely file an answer to defendant's third amended petition and for further appropriate and timely proceedings on the petition.

¶ 33    For these reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for the State's filing of an answer and for further proceedings on defendant's third amended petition.

¶ 34    Reversed and remanded for further proceedings.